### JOHN G. VORIS ET AL. v. MIDDLESEX MUTUAL ASSURANCE COMPANY ET AL.
### (SC 18281)

Rogers, C. J., and Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued February 23—officially released July 27, 2010

*Paul L. Bollo*, for the appellants (plaintiffs).

*Jon Berk*, with whom was *Russell Jarem*, for the appellees (defendants).

*Opinion*

KATZ, J. The plaintiffs, John G. Voris and Joan Voris, appeal[1] from the summary judgment rendered by the trial court in favor of the defendants, Middlesex Mutual Assurance Company (Middlesex) and Middle Oak Company (Middle Oak), in the plaintiffs' action seeking a declaration requiring the defendants to provide the plaintiffs with underinsured motorist benefits. This case

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and upon motion by the defendants, we transferred the appeal to this court pursuant to Practice Book § 65-2 and General Statutes § 51-199 (c).

presents three issues on appeal, specifically, whether the trial court properly: (1) determined that the plaintiffs' action was barred by the contractual limitation provision contained in the insurance policy issued to them by the defendants; (2) determined that there were no genuine issues of material fact that precluded granting the defendants' motion for summary judgment; and (3) determined that General Statutes § 38a-336 (g) (1),[2] which prescribes a minimum time limitation, consistent with the policy at issue, that underinsured motorist insurers may set for an insured to initiate a claim, does not constitute an unconstitutional delegation of legislative power. We conclude that the trial court acted properly, and accordingly, we affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The plaintiffs held an automobile insurance policy issued by Middlesex through Middle Oak, which provided them with underinsured motorist coverage. The policy included a provision that required any actions against the defendants to be brought within three years of the date of the accident, but which also permitted a claim for underinsured motorist benefits to be brought at a later date as long as *written* notice

---

[2] General Statutes § 38a-336 (g) (1) provides: "No insurance company doing business in this state may limit the time within which any suit may be brought against it or any demand for arbitration on a claim may be made on the uninsured or underinsured motorist provisions of an automobile liability insurance policy to a period of less than three years from the date of accident, provided, in the case of an underinsured motorist claim the insured may toll any applicable limitation period (A) by notifying such insurer prior to the expiration of the applicable limitation period, in writing, of any claim which the insured may have for underinsured motorist benefits and (B) by commencing suit or demanding arbitration under the terms of the policy not more than one hundred eighty days from the date of exhaustion of the limits of liability under all automobile bodily injury liability bonds or automobile insurance policies applicable at the time of the accident by settlements or final judgments after any appeals."

of intent to bring such a claim was filed within that three year period.[3]

On May 10, 2004, the plaintiffs were involved in an automobile accident with Peter Molinaro and commenced a legal action against him on May 1, 2006.[4] By telephone on May 11, 2004, John Voris notified Middlesex of the prior day's accident. On June 22, 2007, the plaintiffs provided written notice to the defendants that they intended to seek benefits under their underinsured motorist coverage for injuries sustained as a result of their accident with Molinaro.

On August 22, 2007, Middlesex notified the plaintiffs that their claim for underinsured motorist benefits was untimely, and would therefore be denied. Following that notice, the plaintiffs commenced this action against the defendants, seeking a declaratory judgment obligating them to pay benefits under the plaintiffs' underinsured motorist coverage. The defendants thereafter moved for summary judgment on the ground that the plaintiffs' claim for benefits was time barred. The plaintiffs then moved to amend their complaint, additionally seeking a declaratory judgment that § 38a-336 (g) (1) violated either the United States constitution or the constitution of Connecticut because it delegated legisla-

---

[3] The provision in question, which was included in the uninsured/underinsured motorists supplement to the plaintiffs' insurance policy, provided that "all suits must be brought within three years of the date of the accident. However, the time for bringing suit for Underinsured Motorist benefits may be suspended provided:

"1. The injured person notifies us in writing of their Underinsured Motorist claim within three years of the date of the accident; and,

"2. The injured person commences suit under the terms of this policy not more than 180 days from the exhaustion of the limits of liability from all auto bodily injury liability policies or bonds, applicable at the time of the accident by settlement or final judgment after any appeals."

The plaintiffs do not dispute their failure to provide written notice of their underinsured motorist claim prior to June 22, 2007.

[4] No part of the separate action against Molinaro is presently before this court.

tive authority to insurers.[5] They also objected to the defendants' motion for summary judgment, claiming, inter alia, that genuine issues of material fact existed, and that § 38a-336 (g) (1) constitutes an invalid delegation of legislative power. In support of their opposition to the defendants' motion, the plaintiffs submitted an affidavit from John Voris wherein he attested to the events underlying the amended complaint and further claimed that, in the course of his May 11, 2004 telephone call to Middlesex, he was "led to believe that this notice constituted the correct notification procedure under [his] policy and preserved all of [his] rights under [his] policy including a claim for underinsured motorist benefits." The trial court granted the plaintiffs' motion to amend the complaint and thereafter the court granted the defendants' motion for summary judgment, concluding that the policy's notice restriction provision provided an absolute bar to the plaintiffs' recovery, that no genuine issues of material fact existed, and that § 38a-336 (g) (1) was constitutional. This appeal followed.

I

The plaintiffs first claim that the trial court improperly concluded that, as a matter of law, the plaintiffs' admittedly late written notice to the defendants of their intent to claim underinsured motorist benefits constituted an absolute bar to recovery of such benefits. Specifically, the plaintiffs contend that the court should not have strictly construed the time limitation and instead should have applied the principle recognized in *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 418–19, 538 A.2d 219 (1988), that strict compliance with

---

[5] In their amended complaint, the plaintiffs also alleged that the insurance policy did not comply with the requirements of § 38a-336 (g) (1) and that the statute violates the equal protection clause of the United States constitution. The trial court rejected those claims, and the plaintiffs have not challenged those determinations on appeal.

contract notice terms may be excused in order to avoid a forfeiture, as long as there is no prejudice to the insurer. They contend that this principle should control in the present case because the policy is a contract of adhesion and because § 38a-336, which mandates the provision of underinsured benefits, is a remedial statute. We disagree.

Before addressing the merits of this claim, we must address the appropriate standard for this court's review. "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 199, 931 A.2d 916 (2007).

"We begin our analysis with the general principles governing the construction of insurance policies. An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The policy words must be accorded their natural and ordinary meaning." (Internal quotation marks omitted.) *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 199, 901 A.2d 666 (2006). Although "[s]tandardized contracts of insurance continue to be prime examples of contracts of adhesion"; (internal quotation marks omitted) *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 264 n.6, 757 A.2d 526 (2000); that factor would bear on our construction of the provision at issue only if the insurance contract were ambiguous. See *Parrot* v. *Guardian Life Ins. Co. of America*, 273 Conn. 12, 23 n.11, 866 A.2d 1273 (2005). There is, however, no ambiguity in the time limit provision at issue

in the present case. The trial court therefore correctly concluded that, as a general matter, the plaintiffs are "bound by the terms of the policy [they] accepted and under which [they] paid premiums," regardless of whether the policy is a contract of adhesion. We therefore turn to the plaintiffs' contention that, despite the concededly late written notice of their intent to seek underinsured motorist benefits, they were nevertheless entitled to continue to seek those benefits.

This court has considered instances of such late action on several prior occasions. In *McGlinchey* v. *Aetna Casualty & Surety Co.*, 224 Conn. 133, 617 A.2d 445 (1992), this court had rejected a claim that it violated public policy to enforce a two year time limit in an underinsured motorist policy to bar the plaintiff's claim. The court relied on the facts that the insurance policy conformed to the time limit permitted by the statute that then governed underinsured motorist policies; see General Statutes (Rev. to 1987) § 38-27 (precluding insurers from establishing time limit of less than two years for bringing underinsured and uninsured motorist claims), now codified at General Statutes § 38a-290; and that this provision "demonstrates that the legislature recognized that insurance carriers were free to contract for a period of limitation of no less than two years." *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 140–41. This court also noted our historic refusal to accept good faith deviations from statutory time limits on underinsured motorist recovery, and concluded that there was "no reason why contractual conditions on underinsured motorist insurance are not equally enforceable." Id., 140. In *Serrano* v. *Aetna Ins. Co.*, 233 Conn. 437, 664 A.2d 279 (1995), which dealt with constitutional challenges to the retroactive application of the public act that had extended the statutory minimum period for claims on underinsured motorist policies from two years to three; see Public Acts 1993, No.

93-77, § 2; this court characterized our previous case law as setting forth the proposition that an insurer is "entitled to enforce an unambiguous policy provision requiring an insured to file an action for underinsured motorist benefits within [a certain time period] from the date of the accident." *Serrano* v. *Aetna Ins. Co.*, supra, 443 n.7 (citing decisions in *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 133, and *Hotkowski* v. *Aetna Life & Casualty Co.*, 224 Conn. 145, 617 A.2d 451 [1992]); see *Coelho* v. *ITT Hartford*, 251 Conn. 106, 113, 752 A.2d 1063 (1999) (similarly characterizing this case law).

In *Tracy* v. *Allstate Ins. Co.*, 268 Conn. 281, 283, 842 A.2d 1123 (2004), this court affirmed the judgment of the Appellate Court and adopted its reasoning in affirming the trial court's summary judgment rendered in favor of the defendant insurance company.[6] See *Tracy* v. *Allstate Ins. Co.*, 76 Conn. App. 329, 819 A.2d 859 (2003); see also *Tracy* v. *Allstate Ins. Co.*, 70 Conn. App. 726, 799 A.2d 1109 (2002).[7] That defendant insurer, like the defendant in the present case, had moved for summary judgment on the ground that the plaintiff had failed to commence her legal action within the three year contractual limit. *Tracy* v. *Allstate Ins. Co.*, supra, 70 Conn. App. 727. The plaintiff therein had argued unsuccessfully that her failure to comply with the limiting provision should be excused because it was caused by her compliance with other terms of the contract. Id., 729. The Appellate Court determined that the plaintiff

[6] In affirming the judgment of the Appellate Court, this court, in a per curiam opinion, determined that "[t]he thoughtful and comprehensive opinion of the Appellate Court . . . properly resolved the issue in this certified appeal. A further discussion by this court would serve no useful purpose." (Citation omitted.) *Tracy* v. *Allstate Ins. Co.*, supra, 268 Conn. 283. Accordingly, we treat the reasoning of the Appellate Court in that case as our own.

[7] The Appellate Court opinion in *Tracy* v. *Allstate Ins. Co.*, supra, 76 Conn. App. 329, superseded in part the previous opinion by that court in *Tracy* v. *Allstate Ins. Co.*, supra, 70 Conn. App. 726, after a motion for reconsideration was granted.

could have filed her claim within the specified time period without violating any other provision of the contract and that she was therefore required to do so in order to preserve her claim. Id., 733.

Despite this case law, the plaintiffs contend that they should not be compelled to forfeit the benefits of their policy simply because they failed to meet strict time limits, unless that late notice prejudiced the defendant. The plaintiffs correctly point out that in *Aetna Casualty & Surety Co.* v. *Murphy*, supra, 206 Conn. 409, this court concluded that an insured could recover under an insurance contract despite late notification to the insurer when the insurer was not materially prejudiced by the late notice. Id., 417–18. The notification clause in *Murphy*, however, was substantively distinct from the clause at issue in the present case. The provision in *Murphy* specified a time limit for notification of the " 'occurrence,' " not for the initiation of a claim with the insurer as a result of the occurrence. Id., 411. Furthermore, the clause at issue in *Murphy* required notice of the occurrence " 'as soon as practicable,' " not notice within a specified time period.[8] Id. Notably, in the present case, in addition to the provision at issue regarding the three year period for filing a claim for underinsured motorist benefits, the plaintiffs' policy contained a similar provision to the one in *Murphy*, requiring that the defendants "be notified promptly of how, when, and where the accident or loss happened," the satisfaction of which is not at issue in this case. *Murphy* is, therefore, wholly inapposite to the question of whether the plaintiffs' failure to comply with the provision setting the three year time limit on filing an underinsured

[8] The plaintiff in *Murphy* also had failed to comply with a provision providing: "If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by him or his representative." (Internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Murphy*, supra, 206 Conn. 411.

motorist claim constituted a legal bar to obtaining those benefits.

Although the plaintiffs did not rely on it, our research has revealed a single case, *Hotkowski* v. *Aetna Life & Casualty Co.*, supra, 224 Conn. 145, wherein this court appeared to raise the possibility of extending the prejudice rule of *Murphy* to a late claim for underinsured motorist benefits. In *Hotkowski*, however, this court merely acknowledged *Murphy* and assumed, without deciding, that *if* lack of prejudice to an insurer could bear upon the question of whether a late claim was time barred, the plaintiff had failed to adduce any evidence that the insurers were not prejudiced by the lateness of the plaintiff's claim. Id., 149. To the extent that *Hotkowski* left open the question of whether prejudice should be considered in determining if an insured may be excused from strict compliance with a specific time limit for bringing underinsured motorist claims, we now expressly reject this proposition.

We apply a different rule to the type of notice of accident provision in *Murphy* than the notice for claim provision in the present case for the reasons cogently set forth in *Zieba* v. *Middlesex Mutual Assurance Co.* 549 F. Sup. 1318, 1321 (D. Conn. 1982): "A failure to abide by the limitation of action condition in a policy stands on a much different footing than a non-compliance with the notice provisions. . . . [T]he main purpose underlying the notice stipulations is to safeguard the insurer from prejudice in processing a claim. Therefore, where an insurer's interests have not been harmed by a late notice, the reason for the notice condition is lacking. By contrast, limitation periods on suits are designed to promote justice by preventing surprises through revival of stale claims, to protect defendants and courts from handling matters in which the search for truth may be impaired by loss of evidence, to encourage plaintiffs to use reasonable and proper diligence in

enforcing their rights, and to prevent fraud. . . . The presence or absence of prejudice is not, nor should it be, a factor in deciding whether an insurer may effectively assert this defense under the policy." (Citations omitted.) In our view, this reasoning has particular force when the legislature has weighed competing policy considerations affecting both parties and has prescribed both a minimum time limitation that the insurer may impose for filing the claim and a tolling provision.

In short, we affirm the general principle that "[c]ontracting parties are free to adopt an unambiguous contract provision" limiting the time in which an insurance claim must be filed; *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 224 Conn. 139; and that, when they do so, "failure to comply with the terms therein bar[s] recovery." (Internal quotation marks omitted.) *Tracy* v. *Allstate Ins. Co.*, supra, 70 Conn. App. 731. Since the plaintiffs in the present case neither filed an underinsured motorist action within the contractually specified time period nor tolled that period in accordance with the contract, in the absence of some applicable contract or other legal defense to bar enforcement of the contract as written, we conclude that the trial court properly determined that their underinsured motorist action is barred. See id., 733.

II

The plaintiffs' second claim is that the trial court improperly determined that there were no genuine issues of material fact that precluded the granting of the defendants' motion for summary judgment. Specifically, the plaintiffs contend that genuine issues of material fact existed as to whether: (1) the defendants suffered any prejudice due to the plaintiffs' late notice; (2) the plaintiffs substantially complied with their policy's notice requirements; and (3) the plaintiffs had been misled as to the notice requirements of the policy. Our

conclusion in part I of this opinion that the plaintiffs were required, as a matter of law, to strictly comply with the time limitations to recover under the policy necessarily resolves the first and second of these issues, because that conclusion renders legally immaterial whether the plaintiffs substantially complied with those time limits or whether the defendants suffered any prejudice from the plaintiffs' delay. With respect to the third issue, we are not persuaded that it presents a genuine issue of material fact.

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." *Connell* v. *Cowell*, 214 Conn. 242, 246–47, 571 A.2d 116 (1990). A material fact is "[a] fact that is significant or essential to the issue or [the] matter at hand." Black's Law Dictionary (9th Ed. 2009); accord *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 757, 905 A.2d 623 (2006) ("[a] material fact . . . [is] a fact which will make a difference in the result of the case" [internal quotation marks omitted]).

The record reveals the following additional undisputed facts. In their amended complaint, the sole allegation relating to their initial notice to the defendants was that "[o]n or about May 10, 2004, the [p]laintiffs reported said accident to the [d]efendants and the [d]efendants assigned [c]laim number 06A-59184 to said accident." In his affidavit in opposition to the defendants' motion for summary judgment, John Voris attested: "On the day following the collision with [Molinaro], I reported the accident to Pam Shannon of Middlesex . . . . As a result of my conversation with [Shannon], I was led to believe that this notice constituted correct notification procedure under my policy and preserved all of my rights under my policy including a claim for underinsured motorist benefits." The trial court concluded that this assertion was vague because it spoke to what John

Voris believed, not what he was told, and that his belief was not a material issue in the case.

The plaintiffs claim that there is a genuine issue of material fact as to whether John Voris was misled in his May 11, 2004 conversation with Shannon. On its face, John Voris' affidavit is insufficient to establish a genuine issue of fact with regard to whether the defendants actually misled the plaintiffs. To defeat a motion for summary judgment, the nonmoving party must " 'provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact.' " *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 381, 713 A.2d 820 (1998). Evidence is defined as "[s]omething (including testimony, documents and tangible objects) that tends to prove or disprove the existence of an alleged fact . . . ." Black's Law Dictionary, supra.

In this instance, the "alleged fact" is that Shannon, an employee holding an unspecified position with Middlesex, misled John Voris on May 11, 2004.[9] The plaintiffs have not met the necessary burden of production with regard to this claim to overcome the defendants' motion for summary judgment—they have failed to present any evidence as to what the defendants in fact did to mislead them. The plaintiffs have not presented any evidence as to what Shannon actually said to John Voris. Indeed, there is no basis to determine whether Shannon's response to John Voris' report of the accident could have led a reasonable person to form the belief that his oral notification of the accident served as notification for the purposes of his underinsured motorist coverage. The plaintiffs, by submitting John Voris' affidavit, may have presented sufficient evidence to create

---

[9] We note that the plaintiffs proffered no evidence that Shannon had any actual or apparent authority to waive the written notice requirement. In fact, the policy provision at issue provided that "[t]his policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us."

a genuine issue of fact as to whether they misunderstood the terms of their policy, but they have not alleged even a single action on the part of the defendants that led to that misunderstanding.

This court has held that, "even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 250, 618 A.2d 506 (1992). The plaintiffs' allegations speak only to John Voris' state of mind, and fail to present a factual predicate with regard to anything beyond that. "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri* v. *Dacon*, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829, 106 S. Ct. 91, 88 L. Ed. 2d 74 (1985). In the absence of an allegation of conduct by the moving party, we agree that a mere assertion of the state of mind of the party opposing the motion for summary judgment cannot present a factual predicate for a claim that the defendants misled the plaintiffs.[10] We therefore conclude that the trial court

---

[10] We note, additionally, that even if the plaintiffs could demonstrate a genuine issue of fact as to whether the defendants had misled them, the materiality of that issue would nevertheless be in doubt. The plaintiffs never have indicated what legal argument would be bolstered by a showing that they were in fact misled by the defendants. In their brief, the defendants speculate that the plaintiffs may be attempting to argue that the defendants are estopped from claiming that the plaintiffs' notice was insufficient or time barred. We note, however, that such a claim would fail as a matter of law since the plaintiffs have failed to proffer evidence relating to several elements for a claim of estoppel. The plaintiffs would have to allege and prove not only that they had "change[d] [their] position in reliance on [the] belief" induced in them by the defendants; *Mellon* v. *Century Cable Management Corp.*, 247 Conn. 790, 795, 725 A.2d 943 (1999); but also "that [they] exercised due diligence to ascertain the truth and that [they] not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Internal quotation marks omitted.) *Boyce* v. *Allstate Ins. Co.*, 236 Conn. 375, 385–86, 673 A.2d 77 (1996). The plaintiffs have failed to allege facts adequate to make such showings.

properly determined that there was no genuine issue of material fact that barred summary judgment in the defendants' favor.

## III

Finally, the plaintiffs claim that the trial court improperly determined that § 38a-336 (g) (1) is not a constitutionally invalid delegation of legislative power. Specifically, they contend that the statute delegates to insurers the right, but not the obligation, to establish the period of limitations for underinsured motorist claims, within the minimum period specified by statute and subject to the statutory tolling requirements. We agree with the trial court that § 38a-336 (g) (1) does not constitute an unconstitutional delegation of legislative power.

Although the statute's constitutionality raises a question of law subject to plenary review; *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 294, 914 A.2d 996 (2007); the plaintiffs nevertheless bear "the heavy burden of proving its unconstitutionality beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 500, 915 A.2d 822, cert. denied, 522 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). "While the courts may declare a statute to be unconstitutional, our power to do this should be exercised with caution, and in no doubtful case. . . . Every presumption is to be given in favor of the constitutionality of the statute." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 754, 687 A.2d 506 (1997).

Delegation is defined as an "act of entrusting another with authority or empowering another to act as an agent or representative . . . ." Black's Law Dictionary, supra. The statute at issue, § 38a-336 (g) (1), neither entrusts private insurers with any authority nor renders them agents or representatives of the legislature. To

the contrary, the statutory provision served to *restrict* the discretion of insurance companies in two ways. First, prior to the enactment of § 38a-336 (g) (1), insurance providers were free to limit the time period for the commencement of underinsured motorist claims to two years. *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 224 Conn. 133. Second, at that time, there was no statutorily required tolling mechanism, meaning that insurers were free to adopt a time limit for the commencement of underinsured motorist claims without providing any means of tolling that limitation. As a preliminary matter, the additional requirement of a contractual tolling mechanism is undisputedly a restriction on insurance companies that would not exist in the absence of the statute.

The plaintiffs contend, however, that under *Bayusik* v. *Nationwide Mutual Ins. Co.*, 233 Conn. 474, 659 A.2d 1188 (1995), in the absence of § 38a-336 (g) (1) or its predecessor, underinsured motorist benefits claims would be subject to the six year statute of limitations for contract actions prescribed by General Statutes § 52-576 (a). This claim ignores the nature of § 52-576 (a), which establishes a default rule, rather than creating a compulsory rule in the absence of an explicit exception. Rather than specifying that all contract action limitations must be precisely six years, the statute provides that all actions must "be brought within six years." On its face, the statute leaves open the option for parties to agree to a shorter time limit in a given contract. See, e.g., *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 753 n.9 ("[a]lthough contract actions generally are governed by a six year statute of limitations; see General Statutes § 52-576; it also is undisputed that the contracts at issue prescribed a three year limitations period for claims arising thereunder"). Indeed, for more than one century, the legislature has prescribed minimum time limits for certain types of

insurance policies that fall short of the six year statutory period. See *Monteiro* v. *American Home Assurance Co.*, 177 Conn. 281, 283, 416 A.2d 1189 (1979) (enforcing fire insurance policy setting one year limitation on bringing claim, consistent with statutory limitation, and citing case law dating to late 1800s under which such provisions are enforceable).

As we have observed, prior to the passage of the earlier version of the statute establishing a minimum time limitation for underinsured motorist claims, an insured and his insurer were free to contract to set the time limit to "within one week, ten days, six months or a year." (Internal quotation marks omitted.) *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra 224 Conn. 141 n.6. Both § 38a-336 (g) (1) and its predecessor thereby limited the ability of insurers to impose restrictive notice provisions on their policyholders. With its inclusion of a compulsory tolling mechanism, § 38a-336 (g) (1) further restricts insurers' freedom to contract in this area.

Finally, as we have recognized, automobile insurance is a highly regulated area. *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 370 A.2d 1011 (1976). Underinsured motorist coverage is itself an invention of our legislature. J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (3d Ed. 2004) § 1.1, p. 1-2. In such a highly regulated area, and when dealing with a right that exists only through legislative creation, the legislature has the authority to establish the minimum standards for time restrictions. See *Willoughby* v. *New Haven*, 254 Conn. 404, 429, 757 A.2d 1083 (2000) (legislatively created rights unknown at common law can be regulated with great discretion as "a policy question for the legislature"). A legislative enactment that limits the options available to the subject of the legislation cannot reasonably be called a delegation to that subject. Indeed, the minimum time limit permitted in underinsured contracts under § 38a-

336 (g) (1) no more delegates governmental authority to an insurer than does the mandate that insurers make such insurance for no less than a set amount; see General Statutes § 38a-336 (a); delegate legislative authority to an insured.

Because we conclude that the statute does not constitute a delegation, we need not consider the plaintiffs' argument that the statute does not meet the requirements for a constitutional delegation established in *Connecticut College* v. *Calvert*, 87 Conn. 421, 88 A. 633 (1913). We note, however, that the plaintiffs' reliance on *Calvert*, as well as their reliance on the other authorities they cite as purportedly in support of their position, is misplaced. Those cases concern the government's power of eminent domain and the particular challenges of determining whether a taking is public in nature. They do not provide a useful framework to determine whether the legislature has delegated authority to a private entity. Indeed, the plaintiffs have failed to cite any context other than eminent domain in which this framework has been applied.

The judgment is affirmed.

In this opinion the other justices concurred.