*Notice:* This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LORI McDONNELL, individually, | ) | |
| and on behalf of her minor son, LUKE[*], | ) | Supreme Court Nos. S-14378/14407 |
| | ) | |
| Appellants and | ) | Superior Court No. 3AN-09-09375 CI |
| Cross-Appellees, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | No. 6776 – April 26, 2013 |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Appellee and | ) | |
| Cross-Appellant. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sen K. Tan, Judge.

Appearances: Michael J. Schneider, Law Offices of Michael J. Schneider, P.C., Anchorage, for Appellants and Cross-Appellees. Kimberlee A. Colbo, Hughes Gorski Seedorf Odsen & Tervooren, LLC, Anchorage, for Appellee and Cross-Appellant.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices, and Eastaugh, Senior Justice pro tem.[**]

STOWERS, Justice.

---

[*] We do not use Luke's last name to protect his privacy.

[**] Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## I.    INTRODUCTION

Following a car accident with an uninsured motorist, Lori McDonnell filed suit against her insurer State Farm Mutual Automobile Insurance Company on behalf of herself and her minor son, Luke.  McDonnell sought a declaratory judgment that: (1) she was entitled to have her personal injury claims settled by appraisal under the mandatory appraisal statute, AS 21.96.035; and (2) a provision in her State Farm insurance policies requiring her to file suit against the insurance company within two years of the accident was void as against public policy.  The superior court ruled that the mandatory appraisal statute did not apply to personal injury claims.  The court further ruled that the contractual two-year limitations provision was enforceable, but only if State Farm could show that it was prejudiced by an insured's delay in bringing suit, and that the appropriate accrual date for the limitations period was the date State Farm denied an insured's claim, rather than the date of the accident.

McDonnell and State Farm both appeal.  McDonnell argues the mandatory appraisal statute applies to her personal injury claims and the two-year limitation provision is wholly void as against public policy.  State Farm argues the two-year limitation provision is wholly enforceable.  For the reasons explained below, we affirm the superior court's rulings.

## II.    FACTS AND PROCEEDINGS

On August 7, 2007, McDonnell and her son were involved in a car accident.  The driver of the other vehicle fled the scene and was never identified.

McDonnell had two State Farm insurance policies that both provided uninsured motorist (UM) and underinsured motorist (UIM) coverage.  McDonnell claimed that the accident had caused her and her son Luke to suffer back injuries.  State Farm agreed that McDonnell and her son were entitled to UM coverage but disputed that

the accident had caused all of their asserted injuries. The parties were unable to settle McDonnell's claims.

McDonnell's insurance policies required her to bring suit against State Farm within two years of the accident if the parties could not agree on the amount of her damages. On August 7, 2009, McDonnell filed a complaint against State Farm on behalf of herself and Luke.[1] She sought a declaratory judgment that the two-year limitation provision was unenforceable and that she was entitled to resolve her claims by appraisal under AS 21.96.035.[2] State Farm argued the two-year limitations period was a fully enforceable contract provision and the mandatory appraisal statute did not apply to McDonnell's personal injury claims. McDonnell and State Farm filed cross-motions for summary judgment on the mandatory appraisal issue. McDonnell also filed a motion for judgment on the pleadings on the enforceability of the two-year limitation provision.

Superior Court Judge Sen K. Tan granted State Farm's summary judgment motion, ruling that under the plain language of AS 21.96.035 the mandatory appraisal procedure did not apply to McDonnell's personal injury claims. The superior court also granted in part McDonnell's motion for judgment on the pleadings, ruling that even though the issue was technically moot it should nevertheless be reviewed under the public interest exception to the mootness doctrine. Relying on *Estes v. Alaska Insurance*

---

[1]     Another son, Landon, was also in the car at the time of the accident, and McDonnell's complaint asserted claims on his behalf as well. Landon's claims have been settled with State Farm, and he is not a party to this appeal. We refer to McDonnell's and Luke's claims collectively as McDonnell's claims in this opinion.

[2]     Throughout the trial proceedings, the parties cited to the former mandatory appraisal statute, AS 21.89.035. The statute was renumbered to AS 21.96.035 in 2010. *See* AS 21.96.035 (revisor's notes). For clarity and consistency, we cite to AS 21.96.035 throughout this opinion.

*Guaranty Association*,[3] the court then ruled that the contractual two-year limitations period was enforceable, but only if State Farm could show it had suffered prejudice from an insured's delay in filing suit. The court also ruled that the appropriate accrual date for the limitations period was the date when State Farm denied an insured's claim, not the date of the accident.

Both parties appeal, reiterating their arguments whether AS 21.96.035 applies to McDonnell's UM personal injury claims, whether McDonnell's challenge to the two-year limitations provision was moot, and whether that provision is void as against public policy.

## III.   STANDARD OF REVIEW

We review a judgment on the pleadings under Alaska Civil Rule 12(c) and a summary judgment under Alaska Civil Rule 56 de novo.[4] Both judgments are appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[5] A judgment on the pleadings must be based solely on the pleadings, however, while a summary judgment may be supported by evidence outside the pleadings, such as affidavits and depositions.[6]

---

[3]     774 P.2d 1315, 1317-18 (Alaska 1989).

[4]     *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004) (judgment on the pleadings); *State Farm Mut. Auto. Ins. Co. v. Lestenkof*, 155 P.3d 313, 316 (Alaska 2007) (summary judgment).

[5]     *In re Life Ins. Co. of Alaska*, 76 P.3d 366, 368 (Alaska 2003); *Hebert v. Honest Bingo*, 18 P.3d 43, 46-47 (Alaska 2001).

[6]     *See* Alaska R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."); Alaska R. Civ. P. 56(c) (providing summary judgment motions may be supported by "the pleadings, depositions, answers
(continued...)

Whether State Farm is entitled to summary judgment on the mandatory appraisal issue turns on the interpretation of AS 21.96.035. We apply our independent judgment to questions of statutory interpretation, adopting the rule of law that is "most persuasive in light of precedent, reason, and policy."[7] Whether McDonnell is entitled to a judgment on the pleadings on the two-year limitation issue turns on the enforceability of that contract provision, a question of law that we review de novo.[8]

## IV. DISCUSSION

### A. Mandatory Appraisal Under AS 21.96.035 Does Not Apply To McDonnell's Personal Injury Claims.

Alaska regulates insurance through a comprehensive insurance code.[9] Alaska Statute 21.96.035 provides that certain types of insurance policies must include an appraisal clause for resolving disputes over the value of a covered loss:

> A motor vehicle or similar policy, a policy providing property coverage, or any other policy providing first party property, casualty, or inland marine coverage, issued or delivered in this state, must include an appraisal clause providing a contractual means to resolve a dispute between

---

[6](...continued)
to interrogatories, and admissions on file, together with the affidavits . . . ."); *see also Hebert*, 18 P.3d at 46 ("The purpose of a Rule 12(c) motion is to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.") (internal quotation marks omitted).

[7]     *Life Ins. Co. of Alaska*, 76 P.3d at 368 (quoting *Jerue v. Millett*, 66 P.3d 736, 740 (Alaska 2003)).

[8]     *See State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008); *Teel*, 100 P.3d at 4.

[9]     *See* AS 21.03.010(a) ("All persons transacting a business of insurance in this state . . . shall comply with the applicable provisions of [Alaska's insurance code].").

the insured and the insurer over the value of a covered first party loss for real property, personal property, business property, or similar risks.[10]

The statute also describes in detail the appraisal process that the insurer and insured must follow:

> If the insured and the insurer fail to agree on the amount of a covered first party loss, either may make written demand upon the other to submit the dispute for appraisal. Within 10 days of the written demand, the insured and insurer must notify the other of the competent appraiser each has selected. The two appraisers will promptly choose a competent and impartial umpire. Not later than 15 days after the umpire has been chosen, unless the time period is extended by the umpire, each appraiser will separately state in writing the amount of the loss. If the appraisers submit a written report of agreement on the amount of the loss, the agreed amount will be binding upon the insured and insurer. If the appraisers fail to agree, the appraisers will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding upon the insured and insurer.[11]

McDonnell describes AS 21.96.035 as mandating an "appraisal-arbitration process" and argues that she has a right to resolve her UM dispute with State Farm by way of this process. She argues that under the plain language of the statute, the appraisal process applies to personal injury claims because the statute applies to disputes over the value of "a covered first party's loss for real property, *personal property*, business property, or similar risks."[12] Although the insurance code does not define "personal

---

[10]     AS 21.96.035.

[11]     *Id.*

[12]     *Id.* (emphasis added).

property,"[13] the general statutory definition under AS 01.10.060 provides, "In the laws of the state, unless the context otherwise requires, . . . 'personal property' includes money, goods, chattels, *things in action*, and evidences of debt."[14] A "thing in action," also called a "chose in action," includes claims for damages, such as a personal injury claim.[15] We have recognized that "a chose in action, such as [a plaintiff's] claim for personal injuries, is a form of property."[16] McDonnell argues that we must presume the legislature knew the term "personal property" included personal injury claims,[17] therefore this term should be given its plain meaning under the general statutory definition of "personal property."

State Farm counters that the general definition of "personal property" under AS 01.10.060 is not conclusive because the statute requires consideration of the context

---

[13]     *See* AS 21.97.900.

[14]     AS 01.10.060(a)(9) (emphasis added).

[15]     *See Bergen v. F/V St. Patrick*, 686 F. Supp. 786, 787 (D. Alaska 1988) ("A 'thing in action' is a chose in action . . . ."); BLACK'S LAW DICTIONARY 258, 1617 (9th ed. 2009) (defining "chose in action" as synonymous with "thing in action" and as including "a claim for damages in tort" or "[t]he right to bring an action to recover a debt, money, or thing").

[16]     *Bush v. Reid*, 516 P.2d 1215, 1219 (Alaska 1973) ("We begin with the understanding that a chose in action, such as Bush's claim for personal injuries, is a form of property.").

[17]     *See Young v. Embley*, 143 P.3d 936, 945 n.51 (Alaska 2006) (The legislature is "presumed to be aware of common-law terms of art.").

in which the term is used,[18] and McDonnell's interpretation is inconsistent with the ordinary meaning of the term "appraisal."

The superior court rejected McDonnell's interpretation of AS 21.96.035, ruling that the context and structure of the statute show the mandatory appraisal procedure is limited to disputes over the value of tangible property. The court reasoned that: (1) the statute's expedited timeline suggests the legislature did not intend for the process to apply to complex medical disputes; (2) the legislature specifically used the term "appraisal," which is not synonymous with "arbitration"; and (3) McDonnell's interpretation would require the "appraisal" of essentially all claims, thereby rendering superfluous the statute's limitation to certain types of property loss. The court also noted a "conceptual issue" with McDonnell's argument that a chose in action is personal property subject to mandatory appraisal, reasoning "the right to sue is the property right, not the injury on which the right to sue is based"; therefore McDonnell and her son "should not be able to arbitrate their right to sue when what they want is to arbitrate the value of the injury itself."[19]

We interpret statutes "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its

---

[18] AS 01.10.060(a)(9) ("In the laws of the state, *unless the context otherwise requires*, . . . 'personal property' includes money, goods, chattels, things in action, and evidences of debt.") (emphasis added).

[19] Judge Tan also noted that Superior Court Judge John Suddock had recently considered this issue in another case and reached the same conclusion. *See Widby v. State Farm Mut. Auto. Ins. Co.*, No. 3AN-08-7866 CI (Alaska Super., Sept. 15, 2009). Judge Suddock ruled that the mandatory appraisal statute does not apply to personal injury claims, reasoning "just because bodily injury claims are 'choses in action' characterizable as personal property, the injured human body cannot itself be reasonably categorized as a personal property risk subject to appraisal by experts on a fifteen-day schedule." *Id.*

purpose."[20] We have rejected a mechanical application of the plain meaning rule in favor of a sliding scale approach to statutory interpretation.[21] Thus, "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[22]

### 1. Plain language of the statute

We conclude that the superior court's interpretation of AS 21.96.035 is more consistent with the plain language of the statute than McDonnell's interpretation. McDonnell is correct that under a very narrow and literal interpretation of the statute, AS 21.96.035 applies to disputes over the value of "personal property," which is generally defined under AS 01.10.060(a)(9) as including "things in action," such as a personal injury claim. But, as State Farm argues, the general statutory definition of "personal property" does not apply if "the context [of the statute] otherwise requires."[23] McDonnell's plain language argument is unpersuasive when the text, context, and structure of the statute are considered as a whole.

First, AS 21.96.035 states that it applies to disputes over the value of a "loss for real property, personal property, and business property, or other similar risks." Interpreting a "loss for . . . personal property" as a "loss for . . . a personal injury claim" as McDonnell advocates does not make sense, grammatically or conceptually. As the

---

[20] *Nelson v. Municipality of Anchorage*, 267 P.3d 636, 639 (Alaska 2011).

[21] *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991).

[22] *Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005) (quoting *Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787-88 (Alaska 1996)).

[23] AS 01.10.060(a)(9).

superior court observed, McDonnell is not seeking an appraisal of a loss to her *claim*, but an appraisal of the underlying injury itself.

Second, if the legislature intended for "personal property" to include all "choses in action," then essentially all insurance claims would be subject to mandatory appraisal. This would render the statute's language limiting the appraisal process to "real property, . . . business property, and other similar risks" superfluous.[24] When engaging in statutory interpretation, "[w]e must presume 'that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous,' " and "we must, whenever possible, interpret each part or section of a statute with every other part or section, so as to create a harmonious whole."[25] Application of these principles convinces us that the legislature did not intend the phrase "personal property" to include all choses in action.

Third, AS 21.96.035 mandates an "appraisal" clause, which is not synonymous with "arbitration," despite McDonnell's characterizations to the contrary.[26] As the Alabama Supreme Court has observed, "An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties . . . , whereas an agreement for appraisal extends merely to the resolution of the specific issues of

---

[24]     AS 21.96.035.

[25]     *State, Dep't of Commerce, Cmty., & Econ. Dev., Div. of Ins. v. Progressive Cas. Ins. Co.*, 165 P.3d 624, 629 (Alaska 2007) (quoting *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999)).

[26]     An insured made a similar argument in *Merrimack Mutual Fire Insurance Co. v. Batts*, and the Tennessee Court of Appeals observed, "[The insured's] argument that the appraisal clause in her insurance policy is an arbitration agreement overlooks the fact that arbitration proceedings and appraisal proceedings are not the same thing." 59 S.W.3d 142, 149-50 (Tenn. App. 2001).

actual cash value and the amount of loss."[27] Questions of coverage, causation, or liability are not resolved by appraisal.[28] The Fifth Circuit has also explained the differences between appraisal and arbitration:

> Insurance appraisals are generally distinguished from arbitrations. While both procedures aim to submit a dispute to a third party for speedy and efficient resolution without recourse to the courts, there are significant differences between them. For example, an arbitration agreement may encompass the entire controversy between parties or it may be tailored to particular legal or factual disputes. In contrast, an appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the policy. Additionally, an arbitration is a quasi-judicial proceeding, complete with formal hearings, notice to parties, and testimony of witnesses. Appraisals are informal. Appraisers typically conduct independent investigations and base their decisions on their own knowledge, without holding formal hearings.[29]

---

[27] *Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 388-89 (Ala. 2007) (quoting *Cas. Indem. Exch. v. Yother*, 439 So. 2d 77, 80 (Ala. 1983)). The *Rogers* court also noted that this distinction between appraisal and arbitration is consistent with case law from other jurisdictions. *Id.*

[28] *See id.* at 389-92.

[29] *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1061-62 (5th Cir. 1990) (internal citations omitted); *see also Minot Town & Country v. Fireman's Fund Ins. Co.*, 587 N.W.2d 189, 190 (N.D. 1998) (observing that there are "significant differences" between appraisal and arbitration); *Miller v. USAA Cas. Ins. Co.*, 44 P.3d 663, 673 (Utah 2002) ("Although appraisal may be used as another form of alternative dispute resolution, it is not arbitration."); LEE R. RUSS & THOMAS F. SEGALLA, 15 COUCH ON INSURANCE § 209:8, at 209-16 to 209-17 (3d ed. 2005) (explaining that "appraisal is distinguished [from arbitration] by its more limited role" and that "[i]n the insurance context, appraisal is often sought to fix the amount of the loss, or replacement cost of real property," which must "be distinguished from the insured's right, if any, to recover on

(continued...)

Alaska's statutory scheme recognizes the distinction between appraisal and arbitration. The mandatory appraisal process for insurance disputes is codified under AS 21.96.035, while arbitration procedures are separately codified under Alaska's Uniform Arbitration Act.[30] As the superior court here and courts in other jurisdictions have observed, there are key distinctions between the appraisal process and the arbitration process: Appraisal follows an expedited timeline and is resolved by a panel of independent appraisers, while arbitration is a quasi-judicial proceeding that is governed by a much more detailed statutory scheme and includes formal evidentiary hearings with depositions and witness testimony.[31] Given these distinctions, interpreting the term "personal property" to include personal injury claims appropriate for appraisal under AS 21.96.035 would be problematic because the valuation of a personal injury claim would not be limited to valuation of the underlying injury. The valuation would necessarily take into account issues such as coverage, liability, causation, and attorney's fees — in short, issues properly resolved by arbitration rather than appraisal.

For all of these reasons, we hold that the plain language of AS 21.96.035 does not support interpreting "personal property" to include personal injury claims for the purposes of that statute.

---

[29](...continued)
the policy").

[30]     AS 09.43.010–.595.

[31]     *Compare* AS 21.96.035 (mandatory appraisal process) *with* AS 09.43.050 (right to present evidence and cross-examine witnesses at arbitration hearing), AS 09.43.420 (arbitration process), *and* AS 09.43.440 (procedures for witnesses, subpoenas, depositions, and discovery).

### 2.     Legislative history

Both parties argue that legislative history supports their respective interpretations of the mandatory appraisal statute.  The superior court did not discuss or expressly rely on legislative history in interpreting AS 21.96.035.  The legislative history that the parties cite sheds little additional light on the meaning of AS 21.96.035 — it shows that the legislature consistently described the appraisal clause as a mechanism for resolving disputes over the value of a first-party property loss,[32] but never defined the term "property," which is precisely the issue we are faced with here.  At best, the legislative history that the parties rely on shows that the legislature never expressly contemplated applying the appraisal provision to personal injury claims, and it does not contradict our plain-language interpretation of the statute.

### 3.     Rules of policy considerations and interpretation

McDonnell also cites several policy considerations and general rules of interpretation in support of her argument that the plain language of AS 21.96.035 mandates the appraisal of her personal injury claims.  She first cites the general rule of contract interpretation that arbitration clauses should be given the "broadest possible interpretation,"[33] though she acknowledges that this rule specifically refers to a

---

[32]     For example, AS 21.96.035 is initially described in the Bill Summary to House Bill (H.B.) 425 as "[a] new section requir[ing] that all automobile, homeowner, or dwelling policies include an appraisal clause to resolve a dispute between the insured and the insurer over the value of first party property loss. . . . Without an appraisal clause, such disputes may have required costly litigation."  The Comment to the Sectional Analysis also states that AS 21.96.035 "[a]dds [a] section to require that all automobile, homeowner, or dwelling policies include an appraisal clause for resolving a dispute of property value and details for the clause how the appraisal clause will operate."

[33]     *See* 4 AM. JUR. 2D *Alternative Dispute Resolution* § 50 (2007) ("Arbitration (continued...)

contractual arbitration clause, not a statutorily mandated appraisal clause. She also cites our strong public policy favoring arbitration,[34] the rule that remedial statutes should be broadly interpreted,[35] and the rule that statutes regulating the relationship between an insurer and insured should be interpreted strictly against the insurance company and liberally in favor of the insured.[36] Finally, she argues that her interpretation is consistent with the industry practice of arbitrating UM and UIM coverage disputes.

As State Farm argues, most of these policy considerations and rules of interpretation apply to arbitration clauses, not appraisal clauses, and are only relevant if we first determine that AS 21.96.035 could reasonably be interpreted to require appraisal of a loss to a personal injury claim. Because the text and context of the statute show the legislature did not intend for the mandatory appraisal process to apply to a chose in action — such as a personal injury claim — general rules of interpretation, policy considerations, and industry practice cannot stretch the statute beyond its plain meaning

---

[33](...continued)
clauses are to be given the broadest possible interpretation in order to accomplish the purpose of resolving controversies out of court.").

[34]     *See State v. Pub. Safety Emps. Ass'n*, 257 P.3d 151, 155 (Alaska 2011) (quoting *State v. Pub. Safety Emps. Ass'n*, 235 P.3d 197, 201 (Alaska 2010)) ("Both the common law and Alaska statutes evince a strong public policy in favor of arbitration.").

[35]     *See State for Use of Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148, 1157 (Alaska 1984) ("There is no question that a remedial statute is to be liberally construed to effectuate its purposes.").

[36]     *See Makarka ex rel. Makarka v. Great Am. Ins. Co.*, 14 P.3d 964, 966 (Alaska 2000) ("We . . . resolve ambiguities in the meaning of insurance contracts against the insurer.").

to create such a requirement.[37] Accordingly, we affirm the superior court's ruling that the plain language of AS 21.96.035 demonstrates that the legislature intended for the mandatory appraisal statute to apply to disputes over the value of a loss to tangible property and not to the value of "choses in action" such as McDonnell's personal injury claims.

> **B.** **State Farm's Contractual Two-Year Limitation Provision Is Enforceable Upon A Showing Of Prejudice, And Is Triggered By A Breach Of The Insurance Contract.**

The parties next dispute the enforceability of the two-year limitation provision in State Farm's insurance policies. Because McDonnell filed a motion for judgment on the pleadings on this issue, the superior court's ruling was based solely on the facts alleged in the pleadings.[38]

In her complaint, McDonnell alleged that "[t]he only reason for this litigation is the purported inclusion in the policies described below of State Farm Endorsement 6127BN," which "by its terms, demands that suit be filed against State Farm and the uninsured driver on or before the second anniversary of the crash . . . ." McDonnell requested a declaratory judgment that this provision was "void and unenforceable as a violation of Alaska's motor vehicle insurance scheme." In its answer, State Farm quoted the disputed provision in part and asserted that the provision was enforceable. The disputed provision provides:

---

[37] *See Curran v. Progressive Nw. Ins. Co.*, 29 P.3d 829, 833 (Alaska 2001) ("[P]ublic policy can guide statutory construction but cannot override a clear and unequivocal statutory requirement.").

[38] *See* Alaska R. Civ. P. 12(c); *Hebert v. Honest Bingo*, 18 P.3d 43, 46 (Alaska 2001).

b. If there is no agreement on the answer to either question in 1.a above,[39] then the Insured shall: (1) within two years immediately following the date of the accident file a lawsuit in a state or federal court that has jurisdiction against: (a) us; (b) the owner or driver of the uninsured motor vehicle . . . .

### 1.    Mootness

State Farm first argues, as it did before the superior court, that McDonnell's challenge to the enforceability of the two-year limitation provision as applied to UM claims is moot because she filed a lawsuit within two years of her accident, as the provision requires. The superior court agreed that McDonnell's claim was technically moot for this reason, but concluded review was appropriate under the public interest exception to the mootness doctrine. We disagree that the claim is moot.

A justiciable controversy is one that is not hypothetical, abstract, academic, or moot.[40] "A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails."[41] McDonnell's claim presents a live controversy and, if she prevails, she would be entitled to the relief she seeks. As McDonnell argues, she filed this declaratory judgment action for the very purpose of challenging the two-year limitation provision, not for the purpose of

---

[39]    Neither party quoted the contested provision in full or attached McDonnell's insurance policies to their pleadings. McDonnell attached her insurance policies to her motion for summary judgment on the mandatory appraisal issue, however. The policies show that the questions the insurer and insured must agree on are whether the insured is legally entitled to collect damages from the UM motorist and the amount of those damages.

[40]    *Jefferson v. Asplund*, 458 P.2d 995, 998-99 (Alaska 1969) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

[41]    *Fairbanks Fire Fighters Ass'n v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002).

complying with the provision and litigating the value of her UM claims. An insured should not be forced to purposefully violate a contractual limitation provision and risk losing her insurance benefits in order to bring a justiciable action challenging the enforceability of the provision. Furthermore, if McDonnell prevails on this issue, she will be entitled to the relief she seeks — a declaratory judgment that the two-year limitation provision is unenforceable. She would then have additional time to assess her injuries and continue settlement negotiations with State Farm before she is required to file suit under the generally applicable statute of limitations.[42] Because McDonnell's claim is not moot, we need not consider whether it falls within the public interest exception to the mootness doctrine.[43]

### 2. Ripeness

State Farm also argues that McDonnell cannot challenge the enforceability of the two-year limitation provision as applied to UIM claims because her claims are only for UM coverage. The superior court characterized this as a ripeness issue and ruled that it could consider arguments related to both UM and UIM coverage, reasoning that the statutes and case law generally do not distinguish between the two. On appeal, State Farm argues that we should decline to consider any arguments pertaining to UIM claims. McDonnell argues that distinguishing between the two would unduly fragmentize our analysis of the enforceability of the two-year limitation provision.

---

[42]     The parties dispute whether the two-year tort statute of limitations or the three-year contract statute of limitations applies to UM claims. They also dispute whether the proper accrual date is the date of the accident or a breach of the insurance contract. These issues are addressed *infra*, in Part IV.B.4.

[43]     *See Mullins v. Local Boundary Comm'n*, 226 P.3d 1012, 1018 (Alaska 2010) ("Even if claims are moot, a court may still hear them if they fall within the public interest exception to the mootness doctrine.").

The precise issue before us is whether State Farm's contractual limitation provision is enforceable against McDonnell's UM claims. Therefore, arguments that pertain only to UIM coverage would be hypothetical on the facts of this case. At least one other court has distinguished between UM and UIM claims when addressing statute of limitations issues, reasoning that there are important differences between the two types of coverage that may warrant different treatment for limitations purposes.[44] We agree with State Farm that there may be practical distinctions between UM and UIM claims for purposes of accrual of statutory or contractual periods of limitations, and we therefore analyze the enforceability of State Farm's contractual limitation provision without reference to arguments that pertain solely to UIM claims.

### 3. Overview of the parties' arguments

Turning to the merits of the parties' arguments, State Farm argues that we should hold the two-year tort statute of limitations[45] generally applies to UM claims and that the cause of action accrues on the date of the accident; it argues that if we so hold, the two-year limitation provision in State Farm's policies simply mirrors the generally applicable limitations period and accrual date. State Farm also argues that the two-year limitation provision is a fully enforceable contract provision because it is reasonable and unambiguous. McDonnell argues that the three-year contract statute of limitations[46] generally applies to UM claims and the cause of action does not accrue until the insurer

---

[44] *Oganov v. Am. Family Ins. Grp.*, 767 N.W.2d 21, 26 (Minn. 2009) ("We recognized that differences exist between UIM and UM claims that may have a bearing on the appropriate accrual rule. For example, a UM claimant does not have to recover first from the uninsured tortfeasor; rather, the claimant merely must show that the tortfeasor was uninsured.") (internal citations omitted).

[45] *See* AS 09.10.070.

[46] *See* AS 09.10.053.

breaches the insurance contract; she argues that State Farm's contractual limitation provision attempts to alter the statutory limitations period and accrual date that would generally apply to UM claims. She further argues that State Farm's attempt to contractually modify the generally applicable limitations period and accrual date for UM claims is wholly void as against public policy.

As previously discussed, the superior court ruled that: (1) the three-year statute of limitations for contract claims generally applies to insurance disputes; (2) this limitations period generally begins to run on the date the insurer denies an insured's claim; (3) under *Estes v. Alaska Insurance Guaranty Association*,[47] State Farm may enforce a shorter contractual limitations period only if it first demonstrates it has suffered prejudice as a result of the insured's delay in filing suit; and (4) the contractual limitations period does not commence until State Farm denies an insured's claim.

We first address what limitations period and accrual date would generally apply to McDonnell's UM claims if State Farm's insurance policies did not require her to file suit within two years of the date of the accident. We next consider whether State Farm's contractual provision is enforceable.

### 4. Generally applicable limitations period and accrual date

### a. Limitations period

We have previously held that the statute of limitations for contracts generally applies to insurance disputes.[48] Under AS 09.10.053, the statute of limitations

---

[47] 774 P.2d 1315, 1316-17 (Alaska 1989).

[48] *See Brannon v. Cont'l Cas. Co.*, 137 P.3d 280, 284 (Alaska 2006) (applying the contract statute of limitations to a dispute over an insurer's contractual duty to defend the insured); *Howarth v. First Nat. Bank of Anchorage*, 540 P.2d 486, 490-91 (Alaska 1975) (applying the contract statute of limitations to a dispute over an insurer's

(continued...)

for contract claims is three years.[49]  We have not specifically addressed the applicable statute of limitations for UM claims.

Other jurisdictions almost uniformly hold that the contract statute of limitations applies to UM claims.[50]  These courts generally reason that because an insurer's duty to compensate an insured arises out of its insurance contract, not the mere occurrence of the underlying accident, the contract statute of limitations applies.  For example, the Mississippi Supreme Court held: "A cause of action against an insurer for

---

[48](...continued)
denial of coverage for the insured's loss).

[49]     Alaska Statute 09.10.053 provides:

> Unless the action is commenced within three years, a person may not bring an action upon a contract or liability, express or implied, except as provided in AS 09.10.040, or as otherwise provided by law, or, except if the provisions of this section are waived by contract.

[50]     *See* ALAN I. WIDISS & JEFFREY E. THOMAS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 7.7, at 388-95 (3d ed. 2005) ("Appellate court decisions almost uniformly hold that . . . a claim for uninsured motorist insurance benefits is a contractual right and, therefore, the contract statute of limitations applies.") (collecting cases); Jeffrey A. Kelso & Matthew K. Drevlow, *When Does the Clock Start Ticking? A Primer on Statutory and Contractual Time Limitation Issues Involved in Uninsured and Underinsured Motorist Claims*, 47 DRAKE L. REV. 689, 691 (1999) ("The statutory limitation of actions period applicable to UM/UIM motorist claims was once a highly litigated question.  In recent years, however, the courts seem to have come to a consensus regarding which limitation period should apply. . . . Almost all jurisdictions now hold that the statute of limitations for actions based on contract is the limitation period that is to apply to UM/UIM cases."); *see also Transnational Ins. Co. v. Simmons*, 507 P.2d 693, 695 (Ariz. App. 1973) ("States such as Arizona which have no specific statute of limitations dealing with uninsured motorist claims have uniformly held . . . that the statute of limitations pertaining to written contracts governs a claim by insureds under the uninsured motorist coverage.") (collecting cases).

uninsured motorist benefits is an action on a contract. As such, a three year statute of limitations period applies."[51] The Ohio Supreme Court held: "An insurance policy is a contract, and the relationship and rights of the insurer and insured are contractual in nature; therefore, a claim for UM/UIM coverage sounds in contract, not in tort."[52] And the Arizona Court of Appeals recently explained: "An action sounds in contract when the duty breached is created by the contractual relationship and would not exist but for the contract. . . . But for the insurance contract, State Farm would have no duty to compensate [the insured] for damages caused by the uninsured driver."[53]

State Farm cites cases from North Carolina and Georgia holding that the tort statute of limitations applies to UM claims.[54] One commentator has observed that the insurance industry argued forcefully for this position for years, but North Carolina and Georgia are among the few courts that have adopted this reasoning.[55] Because applying the contract statute of limitations is consistent with our case law and the majority of other jurisdictions, we hold the three-year contract statute of limitations generally applies to UM claims.

---

[51] *Mitchell v. Progressive Ins. Co.*, 965 So. 2d 679, 683 (Miss. 2007) (internal citations omitted).

[52] *Sarmiento v. Grange Mut. Cas. Co.*, 835 N.E.2d 692, 695 (Ohio 2005).

[53] *Assyia v. State Farm Mut. Auto. Ins. Co.*, 273 P.3d 668, 672-73 (Ariz. App. 2012) (internal quotations omitted).

[54] *Vaughn v. Collum*, 224 S.E.2d 416, 582 (Ga. 1976); *Brown v. Lumbermens Mut. Cas. Co.*, 204 S.E.2d 829, 832-33 (N.C. 1974).

[55] Kelso, *supra* note 51, at 691-92.

## b.     Accrual date

Similarly, we have not yet specifically addressed when a UM claim accrues. But we have held that an insured's cause of action against her insurer generally accrues, and the statute of limitations begins to run, "at the time of the breach of the agreement," therefore "[a] cause of action for denial of coverage under an insurance policy accrues when coverage is disclaimed and the insured is notified."[56]

Other jurisdictions are divided regarding the proper accrual date for UM claims.[57] Overall, however, the "most commonly held rule in UM/UIM cases is that the cause of action, because it is contractual in nature, accrues on the date the contract is breached," which is generally the "denial of a claim for benefits."[58] For example, the Delaware Supreme Court held that the appropriate accrual date for a UM claim is determined by the contractual nature of the claim:  "We think the answer to the remaining question — when a cause of action for uninsured motorist benefits accrues and

---

[56]     *Brannon v. Cont'l Cas. Co.*, 137 P.3d 280, 284 (Alaska 2006) (quoting *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 725 (Alaska 2003)) (internal quotation marks omitted); *see also Bauman v. Day*, 892 P.2d 817, 827 (Alaska 1995) ("Generally, the statute of limitations for an action in contract starts to run at the time of the breach."); *Howarth v. First Nat. Bank of Anchorage*, 540 P.2d 486, 490-91 (Alaska 1975) ("The statute of limitations begins to run in contract causes of action from the time the right of action accrues.  This is usually the time of the breach of the agreement . . . .") (internal citations omitted); *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223, 227 (Alaska 1973) (holding an insured's cause of action accrued and limitations period began to run when the insurance company denied coverage).

[57]     *See* Kelso, *supra* note 51, at 692 ("Although there now seems to be some consensus on which statutory limitation period applies, the issue of accrual remains hotly contested. . . . [C]ourts have been inconsistent in their determination of the accrual time.").

[58]     *Id.* at 694.

the three-year limitation . . . begins to run — logically follows from the contract nature of the action."[59]  The court reasoned:

> Under general principles of contract law, the time limitation of a contract claim limitation statute begins to run from the date of breach of contract. . . . Established contract case law thus recognizes that until a breach occurs, there is no justiciable controversy under the contract (here a policy) upon which a party may sue.  So long as the parties to a contract perform in accordance with the bargained-for obligations, no party has a cause to complain.  It is only when one party contends the other party has ceased to perform in violation of the contract that a justiciable controversy exists.[60]

State Farm argues that it would be illogical to use breach of contract as the accrual date for UM claims in a case like this because a factfinder must first determine the amount of damages that McDonnell and her son are legally entitled to collect, and there will be no breach of the insurance contract unless and until State Farm then refuses to pay the damages owed.  State Farm takes a narrow view of when an insurance contract is breached.  Under similar circumstances, the Supreme Judicial Court of Maine concluded that it was not necessary for an insurer to deny *all* liability in order to breach an insurance contract; rather, the insurer's clear refusal to pay for certain medical bills after the insured had requested payment was sufficient to constitute an alleged beach of the contract and trigger the applicable limitations period.[61]  The Iowa Supreme Court also observed that "[u]nder general contract principles, the insured's claim typically accrues

---

[59]   *Allstate Ins. Co. v Spinelli*, 443 A.2d 1286, 1292 (Del. 1982).

[60]   *Id.*

[61]   *Whitten v. Concord Gen. Mut. Ins. Co.*, 647 A.2d 808, 810-11 (Me. 1994).

and the statue of limitations begins to run upon the insurer's denial of coverage *or refusal to pay*."[62]

We agree with this reasoning. As we have previously held, a breach of the insurance contract occurs "when coverage is disclaimed and the insured is notified."[63] We take this opportunity to clarify that it is not necessary for an insurer to disclaim all coverage or liability in order to trigger the statute of limitations — a clear refusal to pay under the contract may be sufficient to constitute an alleged breach of the contract. If the parties disagree over when the contract was allegedly breached and the statute of limitations began to run, the superior court will resolve this factual issue.

State Farm also argues that if a UM claim accrues when the contract is allegedly breached, then the insured could delay triggering the statute of limitations by waiting "years, if not decades" to present a UM claim to her insurance company. This argument is unpersuasive. An insurance company can require the insured to make a claim or notice of potential claim within a certain period of time without requiring the insured to file suit against the insurer.[64] And, as we have previously observed, once insurance companies have received notice of a claim, they "are not forced to stand by

---

[62] *Nicodemus v. Milwaukee Mut. Ins. Co.*, 612 N.W.2d 785, 788-89 (Iowa 2000) (emphasis added).

[63] *Brannon v. Cont'l Cas. Co.*, 137 P.3d 280, 284 (Alaska 2006) (internal footnote omitted).

[64] *See, e.g., Weaver Bros v. Chappel*, 684 P.2d 123, 124-25 (Alaska 1984) (interpreting a notice of claim provision in an insurance policy that required the insured to "promptly give to the [insurer] written notice, with all available particulars, of any accident involving loss or damages to person or property in which he, or any motor-vehicle owned or driven by him, has been involved, and of any claim made on account of any such accident . . . ," and holding this provision was enforceable subject to a showing that the insurer had been prejudiced by untimely notice of a claim).

helplessly as memories fade and physical evidence is lost," but are "entitled to bring declaratory judgment actions to determine coverage at their own convenience."[65]

Because an alleged breach of contract accrual date is more consistent with Alaska case law, the contractual nature of UM claims, and a majority of other jurisdictions, we hold that UM claims accrue when the contract is allegedly breached, which occurs when the insurer denies a claim or clearly refuses a demand for payment under the insurance contract.

In sum, we hold that the three-year statute of limitations for contract claims generally applies to UM claims, and that the limitations period is triggered by an alleged breach of the insurance contract. Because State Farm's contractual limitations provision attempts to modify (shorten) the limitations period and accrual date that would generally apply to McDonnell's UM claims, we must consider whether the provision is enforceable or void as against public policy.

### 5. Contractual modification of the limitations period

A contractual provision may be unenforceable if the provision is unreasonable, unconscionable, or void as against public policy.[66] Courts have generally held that parties may contractually agree to a shorter limitations period if the contractual

---

[65]   *Estes v. Alaska Ins. Guar. Ass'n*, 774 P.2d 1315, 1318 n.1 (Alaska 1989).

[66]   *See Curran v. Progressive Nw. Ins. Co.*, 29 P.3d 829, 837 (Alaska 2001) ("[C]ontract provisions may be void as against public policy . . . ."); *Moore v. Hartley Motors, Inc.*, 36 P.3d 628, 631 (Alaska 2001) (discussing *Municipality of Anchorage v. Locker*, 723 P.2d 1261, 1264-67 (Alaska 1986)) ("In *Locker*, we concluded that a limited liability clause in a contract . . . was unconscionable and void as against public policy."); *Inman v. Clyde Hall Drilling Co.*, 369 P.2d 498, 500 (Alaska 1962) (considering whether a notice provision in an employment contract is void as against public policy, and reasoning "[t]he facts of this case do not persuade us that the contractual provision in question is unfair or unreasonable," or that the provision "is offensive to justice").

limitations provision is unambiguous, reasonable, and does not violate statutes or public policy: "The general rule of contracts is that a contractual provision fixing limitation periods which differ from the time fixed by general statutes of limitations are binding on the contracting parties . . . unless they are precluded by statute or public policy, or are unreasonable or unreasonably short."[67]

In *Fireman's Fund Insurance Co. v. Sand Lake Lounge, Inc.*, we observed that it is not against the public interest for parties to a contract to agree to a shorter limitations period "if the time agreed upon is not so short as to be unreasonable in the light of the provisions of the contract and the circumstances of its performance and enforcement."[68] And in *Estes v. Alaska Insurance Guaranty Ass'n*, we recognized the validity of a contractual limitation provision but held that, due to the nature of insurance

---

[67]       LEE R. RUSS & THOMAS F. SEGALLA, 15 COUCH ON INSURANCE § 235:1, at 235-39 (3d ed. 2005); *see also Voris v. Middlesex Mut. Assurance Co.*, 999 A.2d 741, 748 (Conn. 2010) ("In short, we affirm the general principle that '[c]ontracting parties are free to adopt an unambiguous contract provision' limiting the time in which an insurance claim must be filed . . . ."); *Faeth v. State Farm Mut. Auto. Ins. Co.*, 707 N.W.2d 328, 334 (Iowa 2005) ("We have recognized the validity of contractual limitations on the time for bringing suit against an insurer. . . . In order to be enforced, such provisions must be reasonable."); *Taranto v. La. Citizens Prop. Ins. Corp.*, 62 So. 3d 721, 728 (La. 2011) ("In the absence of a statutory prohibition, a clause in an insurance policy fixing a reasonable time to institute suit is valid.") (emphasis omitted); *Angel v. Reed*, 891 N.E.2d 1179, 1181 (Ohio 2008) ("[T]he parties to a contract may validly limit the time for bringing an action on a contract to a period that is shorter than the general statute of limitations for a written contact, as long as the shorter period is a reasonable one. A contract provision that reduces the time provided in the statute of limitations must be in words that are clear and unambiguous to the policy holder."); *Progressive N. Ins. Co. v. Lyden*, 986 A.2d 231, 235 (R.I. 2010) ("[A] limitations period in an insurance policy is a term to which the parties are specifically bound.") (internal quotation marks omitted).

[68]       514 P.2d 223, 226 (Alaska 1973) (quoting 1A CORBIN ON CONTRACTS § 218, at 311-12 (1963)).

contracts, such provisions are enforceable only when the insurer can demonstrate that it has been prejudiced by the insured's delay in filing suit.[69]

The insurance provision at issue in *Estes* required the insured to commence any suit on the policy within one year of the insured's loss.[70] We first observed that insurance policies differ from traditional, private contracts because "[a]n insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured."[71] Therefore, we reasoned that "time limit[s] on commencement of suit clauses, notice of loss clauses, proof of loss clauses, and cooperation clauses shall all be reviewed on the basis of whether their application in a particular case advances the purpose for which they were included in the policy."[72] Concluding that the "primary purpose of contractual modifications of the statute of limitations is to avoid prejudice, specifically to avoid the extra danger of fraud and mistake associated with stale claims,"[73] we held:

> a limitation on commencement of suit clause should be
> enforced only when the application in a particular case serves
> the primary purpose for which it was included in the policy:
> to avoid prejudice. To avail itself of the contractual one-year
> limit on commencement of suit clause, [the insurer] must

---

[69]    774 P.2d 1315, 1318, 1320 (Alaska 1989).

[70]    *Id*. at 1316.

[71]    *Id*. at 1317 (quoting *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 196 (Pa. 1977)).

[72]    *Id*. at 1318.

[73]    *Id*. (citing *Sand Lake Lounge*, 514 P.2d at 226).

establish that it was prejudiced by [the insured's] delay in filing suit.[74]

Thus, we have recognized the enforceability of shortening contractual limitations provisions in insurance policies, subject to a showing of prejudice by the insurer.[75] We have not, however, considered whether a contractual provision shortening the applicable statutory limitations period for UM claims violates public policy.

Some courts have held that contractual provisions that modify the statutory limitations period for UM claims are wholly enforceable and do not violate public policy.[76] Other courts have held that provisions shortening the limitations period for UM claims are wholly void as against public policy.[77] McDonnell essentially argues that we should adopt the reasoning of those courts that hold such limitation provisions are wholly void as against public policy, while State Farm argues that we should adopt the reasoning of those courts that hold unambiguous contractual limitation provisions must be enforced as written.

---

[74] *Id.* at 1320. We noted an insurance company could establish prejudice by showing "that witnesses had died or their memories faded during the insured's delay in filing suit, or that other evidence had been lost." *Id.* at 1318.

[75] *Id.* at 1318, 1320.

[76] *See Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 31-34 (Mich. 2005) (holding a provision requiring the insured to bring a claim or suit for UM coverage within one year of the accident was enforceable because it did not violate law or public policy); *Sarmiento v. Grange Mut. Cas. Co.*, 835 N.E.2d 692, 695-96 (Ohio 2005) ("A contractual limitation period of two years does not violate the underlying purpose of UM/UIM coverage, because the limitation period does not eliminate or reduce the UM/UIM coverage required by [the Ohio statute mandating such coverage].").

[77] *See Burgo v. Ill. Farmers Ins. Co.*, 290 N.E.2d 371, 373-74 (Ill. App. 1972); *State Farm Mut. Auto. Ins. Co. v. Fitts*, 99 P.3d 1160, 1162 (Nev. 2004).

McDonnell makes several arguments in support of her position that a shortening contractual limitation provision for UM claims violates public policy. She first argues that we have already recognized a "mirror rule" similar to the rule adopted by the Illinois Court of Appeals in *Burgo v. Illinois Farmer's Insurance Co.*[78] The *Burgo* court addressed the enforceability of a policy provision requiring an insured to commence a lawsuit or arbitration proceedings on a UM claim within one year of the accident.[79] The court held that the one-year limitation diminished the statutorily mandated UM coverage and was therefore contrary to public policy and superceded by statute, reasoning: "The contractual limitation may not place an insured in a substantially different position than he would have been had the tort-feasor carried the required insurance coverage."[80]

Most of the Alaska case law that McDonnell relies on merely recognizes the general rule that an insurance policy provision is unenforceable if void as against public policy.[81] She also relies on *State Farm Mutual Automobile Insurance Co. v. Harrington*, where we held that under former AS 21.89.020(c)(1), the policy limits for UM/UIM coverage must be equal to the liability coverage that the insured has voluntarily

---

[78]     *Burgo*, 290 N.E.2d at 373.

[79]     *Id*. at 371.

[80]     *Id*. at 373-74.

[81]     *See Curran v. Progressive Nw. Ins. Co.*, 29 P.3d 829, 833-34 (Alaska 2001); *McKnight v. Rice, Hoppner, Brown & Brunner*, 678 P.2d 1330, 1334 n.4 (Alaska 1984); *Alaska Ins. Co. v. RCA Alaska Comm'cns, Inc.*, 623 P.2d 1216 (Alaska 1981).

purchased.[82] We have since referred to this as the "mirror rule"[83] or the "mirror-image-offer requirement"[84] of AS 21.89.020(c)(1). This rule was derived from a statutory mandate, however, and there is no corresponding statutory provision governing the limitations period for UM claims. Thus, our "mirror rule" does not apply here.

McDonnell next argues that the two-year contractual limitation provision violates AS 21.09.150(b)(4), which instructs the Director of the Division of Insurance to suspend or revoke an insurer's license if the insurer refuses to pay claims or forces insureds to litigate claims "without just cause" as a general business practice.[85] She argues the two-year limitation provision violates this statute by forcing an insured to bring suit against her insurance company to settle her claim. As discussed above, contractual limitation provisions are generally enforceable, and the two-year contractual limitation provision here requires the insured to file suit only if the insurer and insured are unable to settle the claim. The provision does not automatically require an insured to file suit in order to recover insurance benefits, and an insurance company does not act "without just cause" when it relies on the unambiguous terms of the insurance contract.

---

[82]    918 P.2d 1022, 1025-26 (Alaska 1996). Alaska Statute 21.89.020(c)(1) was renumbered as AS 21.96.020(c)(1).

[83]    *See Wing v. GEICO Ins. Co.*, 17 P.3d 783, 787 (Alaska 2001).

[84]    *See Ayers v. United Servs. Auto. Ass'n*, 160 P.3d 128, 133 (Alaska 2007).

[85]    AS 21.09.150(b)(4) ("The director shall, after a hearing, suspend or revoke an insurer's certificate of authority if the director finds that the insurer . . . with a frequency that indicates its general business practice in this state, has without just cause refused to pay proper claims arising under its policies, . . . or without just cause delays adjustment of claims, or compels the insured or claimant to accept less than the amount due them or to employ attorneys or to bring suit against the insurer or an insured to secure full payment or settlement of claims.").

McDonnell also argues that the two-year contractual limitation provision violates several provisions of the Alaska Unfair Claims Settlement Practices Act "if not in letter, at least in spirit."[86] As McDonnell acknowledges, the two-year contractual limitation provision does not directly violate any of the statutory provisions she relies on. We see no direct or "in-spirit" violation of the Unfair Claims Settlement Practices Act in State Farm's contractual limitations period.

Finally, McDonnell argues that the two-year contractual limitation provision conflicts with Alaska's UM and UIM statutes, specifically the statutes requiring an insured to exhaust available remedies before filing a UM or UIM claim with the insurer.[87] As discussed above, this potential conflict is not an issue here because

---

[86] She specifically argues that the two-year contractual limitation provision violates AS 21.36.125(a)(1) (which prohibits "misrepresent[ing] facts or policy provisions relating to coverage of an insurance policy"), AS 21.36.125(a)(8) (which prohibits "compel[ing] an insured . . . in a case in which liability is clear to litigate recovery of an amount due under an insurance policy by offering an amount that does not have an objectively reasonable basis in law and fact"), AS 21.36.125(a)(12) (which prohibits insurers from informing their insureds of "a policy of appealing from an arbitration award in favor of an insured . . . for the purpose of compelling the insured . . . to accept a settlement"), and AS 21.36.125(a)(15) (which prohibits "fail[ing] to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim").

[87] *See* AS 28.20.445(e)(1) ("Uninsured and underinsured motorist coverage . . . may not apply to bodily injury, sickness, disease, or death of an insured or damage to or destruction of property of an insured until the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payments, judgments, or settlements."); AS 28.22.201(a)(1) ("The uninsured and underinsured motorist coverage required under this chapter . . . does not apply to bodily injury, sickness, disease, or death of an insured or damage to or destruction of property of an insured until the limits of liability bonds and policies that apply have been used up by payments or judgments or settlements.").

there was no other available coverage that McDonnell was required to exhaust before filing her UM claims.

In contrast, State Farm argues that we should hold the two-year contractual limitation provision to be wholly enforceable. But we have already held in *Estes* that contractual limitation provisions are subject to a showing of prejudice.[88] State Farm argues that *Estes* is "distinguishable and not controlling here," but State Farm does not explain why *Estes*, which directly addressed the enforceability of a contractual limitation provision in an insurance contract, is not controlling precedent. We note that the *Estes* principle — requiring insurers to demonstrate prejudice when seeking to enforce a shortening contractual limitation provision — has been reaffirmed by this court,[89] recognized as the prevailing law in Alaska by the Ninth Circuit,[90] and adopted as

---

[88] *See Estes v. Alaska Ins. Guar. Ass'n*, 774 P.2d 1315, 1318, 1320 (Alaska 1989).

[89] *Long v. Holland Am. Line Westours, Inc.*, 26 P.3d 430, 435 (Alaska 2001) (citing *Estes*, 774 P.2d at 1318) ("[T]his court has addressed clauses setting time limits on the commencement of suit in the context of insurance policies . . . [and] observed that it would be inequitable to enforce these clauses unless prejudice could be demonstrated."); *Alaska Energy Auth. v. Fairmont Ins. Co.*, 845 P.2d 420, 422-23 (Alaska 1993) (citing *Estes*, 774 P.2d at 1318) ("[O]ur prior decisions have held contractual time limitations to bring suit will not be enforced without some showing of prejudice.").

[90] *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1112 (9th Cir. 2011) (citing *Estes*, 774 P.2d at 1318) ("[A]n insurance company must establish that it suffered the prejudice that a cooperation clause was intended to avoid in order to escape liability based on the insured's breach of the clause.").

persuasive authority by the New Mexico Supreme Court.[91] We see no reason to abandon this principle for UM claims.

State Farm also argues that we should defer to the Division of Insurance's approval of Endorsement 6127BN, which contains the contested two-year contractual limitation provision. We have held that the Division's approval of insurance policies is entitled to "some weight,"[92] but we have also recognized that the Division's approval is merely a "screening mechanism, meant to catch unlawful insurance policies" and "cannot make an unlawful policy lawful."[93] Thus, the Division's approval of the policy here is not dispositive of the issue before us and cannot overrule our holding in *Estes* requiring insurers to demonstrate prejudice before enforcing a contractual limitations provision.

In short, given that we have previously recognized (subject to the prejudice principle) the validity of contractual limitation provisions in *Sand Lake Lounge* and *Estes*, a shorter limitations period for UM claims does not directly violate the statutes governing UM coverage. The *Estes* prejudice principle establishes a reasonable balance between protecting the insured from a shortened limitations period and protecting the insurer from stale claims; subject to this principle, we hold that State Farm's contractual two-year limitations provision is not void as against public policy. Accordingly, we affirm the superior court's ruling that State Farm's contractual two-year limitation provision is enforceable, subject to a showing of prejudice as required by *Estes*.

---

[91]    *Roberts Oil Co. v. Transamerica Ins. Co.*, 833 P.2d 222, 228-29 (N.M. 1992) (adopting the *Estes* rule and reasoning).

[92]    *Nelson v. Progressive Cas. Ins. Co.*, 162 P.3d 1228, 1238 (Alaska 2007).

[93]    *Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 287-88 (Alaska 2012).

-33-                                                                                        6776

## 6.      Contractual modification of the accrual date

As to when the contractual limitations period begins running, we have previously held in *Estes* and *Sand Lake Lounge* that an insurance policy's one-year limitation period "began to run only after the claim was denied."[94]  However, in those cases we were interpreting a contractual limitation provision that required the insured to file suit within one year of "the inception of the loss."[95]  We interpreted this phrase to mean "the date on which the insurance company denies coverage, that is, the date on which the cause of action accrues," concluding it would be unreasonable to interpret the phrase to mean the date of the underlying accident (in those cases, a fire rather than a car accident).[96]  We reasoned that our holding was supported by an important practical consideration — "[i]n insurance loss cases, adequate preparation of a proof of loss requires a substantial amount of time."[97]  We also observed that if we were to interpret the contractual limitation provision as commencing on the date of the underlying accident, "the operational effect of that decision would be to reduce the limitation period to considerably less than one year from the date the cause of action accrued."[98]

 Thus, we have previously interpreted an ambiguous contractual limitation provision as commencing on the date the insured's claim against her insurer accrued, meaning the date the insurer allegedly breached the insurance contract.  But we have not

---

[94]      *Estes*, 774 P.2d at 1319 (citing *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223, 226 (Alaska 1973)).

[95]      *Sand Lake Lounge*, 514 P.2d at 224.

[96]      *Id*. at 226-27.

[97]      *Id*. at 227.

[98]      *Id*.

considered whether a contractual limitation provision that unambiguously modifies the accrual date is enforceable.

McDonnell argues that the two-year limitation provision is unenforceable because it purports to start the limitations period before the insured's cause of action has accrued. Some courts have enforced contractual provisions that modify the accrual date for UM claims.[99] Other courts have held that such provisions are unreasonable and, therefore, unenforceable.[100] We agree with the latter view.

We start with the premise that, as discussed above, a UM claim arises out of the parties' insurance contract, therefore the cause of action generally accrues when the contract is breached. As the Delaware Supreme Court explained, "there is no justiciable controversy under the contract (here a policy) upon which a party may sue" until the contract is breached, because as long as the parties perform in accordance with the contract, no party has cause to complain.[101] It is only when one party contends that the other has violated the contract that a justiciable controversy exists.[102]

By shortening the accrual date for UM claims, State Farm's contractual limitation provision attempts to shorten the limitations period before an insured like

---

[99] *See Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 779 n.1, 784 (Iowa 2000) (stating the court would only apply the traditional accrual date for contract claims "[a]bsent specific language in the . . . policy concerning when the limitations period begins to run"); *Angel v. Reed*, 891 N.E.2d 1179, 1181-82 (Ohio 2008) (holding an unambiguous policy provision requiring the insured to bring suit within two years of the date of the accident must be enforced).

[100] *See Nicodemus v. Milwaukee Mut. Ins. Co.*, 612 N.W.2d 785, 786 (Iowa 2000); *State Farm Mut. Auto. Ins. Co. v. Fitts*, 99 P.3d 1160, 1162-63 (Nev. 2004); *Kraly v. Vannewkirk*, 635 N.E.2d 323, 329 (Ohio 1994).

[101] *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1292 (Del. 1982).

[102] *Id*.

McDonnell has a justiciable cause of action against her insurer. Other courts have found such provisions unreasonable and invalid for this reason. In *Nicodemus v. Milwaukee Mutual Insurance Co.*, the Iowa Supreme Court considered the validity of a contractual limitation provision that attempted to shorten the date of the commencement of the limitations period for UM claims to the date of the accident.[103] The *Nicodemus* court held that "the contractual limitations provision in the [insurance policy], which commences the limitations period before the insured's claim accrues, is unreasonable and, therefore, unenforceable," reasoning that "[a] contractual limitation provision that would require a plaintiff 'to bring his action before his loss or damage can be ascertained' is per se unreasonable."[104] Similarly, in *Kraly v. Vannewkirk*, the Ohio Supreme Court held that "the validity of a contractual period of limitations governing a civil action brought pursuant to the contract is contingent upon the commencement of the limitations period on the date that the right of action arising from the contractual obligation accrues."[105] And in *State Farm Mutual Automobile Insurance Co. v. Fitts*, the Nevada Supreme Court declined to enforce a policy provision that commenced the limitations period for UM and UIM claims on the date of the accident and instead reaffirmed the proposition that an insured's claim against an insurer does not accrue until the insurer breaches the contract.[106]

We agree that it is illogical and unreasonable to contractually require commencement of the limitations period for a UM claim before the insured has a

---

[103]      *Nicodemus*, 612 N.W.2d at 787.

[104]      *Id*. at 786, 788-89 (quoting *Douglass v. Am. Family Mut. Ins. Co.*, 508 N.W.2d 665, 666 (Iowa 1993)).

[105]      *Kraly*, 635 N.E.2d at 329.

[106]      *Fitts*, 99 P.3d at1162-63.

justiciable cause of action against her insurer. If the limitations period for a UM claim commenced on the date of the accident, the insurer could potentially deny an insured's claim or refuse payment shortly before the limitations period ends, leaving the insured with insufficient time to file suit. Similarly, the insurer could deny the insured's claim shortly after the limitations period ends, thereby barring the insured from filing suit at all. Given these practical considerations, we hold that to the extent State Farm's contractual two-year limitation provision purports to trigger the commencement of the limitations period before an insured's cause of action against the insurance company has accrued, the policy provision is unreasonable and unenforceable. Our holding is consistent with *Sand Lake Lounge*, where we held that it would be unreasonable to interpret a contractual limitation provision as commencing on the date of the insured's loss, because such an interpretation would considerably reduce the insured's time to file suit once the cause of action actually accrued.[107] Accordingly, we affirm the superior court's ruling that State Farm's contractual limitations provision does not commence until the insured's UM claim accrues, which occurs when the insurer has allegedly breached the insurance contract, such as by refusing the insured's request for payment or denying the insured's claim.

## V. CONCLUSION

We AFFIRM the superior court's ruling that the mandatory appraisal statute, AS 21.96.035, does not apply to McDonnell's UM personal injury claims. We also AFFIRM the superior court's rulings that the two-year limitation provision in State Farm's insurance policies is enforceable against McDonnell's UM claims, subject

---

[107] *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223, 226-27 (Alaska 1973).

to a showing of prejudice, and that the limitations period does not commence until the insurer allegedly breaches the insurance contract.