*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALASKA SPINE CENTER, LLC, ) | |
| ) | Supreme Court No. S-16917 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-16-10186 CI |
| v. ) | |
| ) | O P I N I O N |
| MAT-SU VALLEY MEDICAL CENTER, ) | |
| LLC, an Alaska limited liability company ) | No. 7349 – March 29, 2019 |
| d/b/a Mat-Su Regional Medical Center; ) | |
| SURGERY CENTER OF WASILLA, ) | |
| LLC; and STATE OF ALASKA, ) | |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances:  Susan Orlansky, Reeves Amodio LLC, Anchorage, for Appellant.  Jennifer M. Coughlin, Landye Bennett Blumstein LLP, Anchorage, for Appellee Mat-Su Valley Medical Center, LLC.  Danielle M. Ryman, Perkins Coie LLP, Anchorage, and David B. Robbins, Kathleen M. O'Sullivan, and Luke Rona, Perkins Coie LLP, Seattle, Washington, for Appellee Surgery Center of Wasilla, LLC. Notice of nonparticipation filed by Dario Borghesan, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee State of Alaska.

Before: Bolger, Chief Justice, Winfree, Stowers, and Carney, Justices.  [Maassen, Justice, not participating.]

CARNEY, Justice.

## I.     INTRODUCTION

The state agency responsible for regulating the operation of healthcare facilities throughout Alaska requires most such facilities to document the need for proposed services before the state approves construction of a new facility.  The agency determined that an ambulatory surgical facility seeking to relocate from Anchorage to Wasilla did not need to submit such documentation because it was moving within the same community as defined by the relevant statute.  Competing medical facilities in the Matanuska-Susitna Borough objected to the determination, arguing that Anchorage and Wasilla are not the "same community" and that the proposed relocation required the usual certification of need.  Because Anchorage and Wasilla are not the same community as contemplated by the statute, we reverse the determination that the facility was exempt from the required certification process.

## II.     FACTS AND PROCEEDINGS

### A.     Background

The Alaska Department of Health and Social Services is responsible for the regulation and provision of numerous health and social services programs.  In order to promote the balanced development and operation of such facilities throughout the state, the legislature established a "Certificate of Need" program to be administered by the Department.[1]  Pursuant to statute and regulation, program staff determine the healthcare needs of an area by using a number of general and service-specific review standards and calculations.[2]  The standards address "Alaska's distinctive operational environment" by

---

[1]     AS 18.07; *see* Ch. 275, § 2, SLA 1976.

[2]     *See* AS 18.07.035, 18.07.101; 7 Alaska Administrative Code (AAC)
(continued...)

taking into account accessibility and the needs of local stakeholders. The program's goal is to ensure that no area receives more or fewer services than it needs.

Most healthcare facilities are required to obtain a certificate of need (CON) before beginning construction:

> (a) Except as provided in (c) and (d) of this section, a person may not make an expenditure of $1,000,000[3] or more for any of the following unless authorized under the terms of a certificate of need issued by the department:
>
> (1) construction of a health care facility;
>
> (2) alteration of the bed capacity of a health care facility; or
>
> (3) addition of a category of health services provided by a health care facility.[4]

Preparing and submitting a CON application is a time-consuming process. The CON application must contain all of the information required in the Department's *Certificate of Need Application Packet*, which includes: a project description with detailed cost estimates and construction timelines; estimates of the population to be served and in what capacity; analysis of the need for these services; documented efforts of community outreach; comparison to community, state, and federal plans; analysis of alternatives; calculations of the impact the facility will have on the existing healthcare system; and evidence that the facility will be accessible to users. The applicant must also

---

**2** (...continued) 07.025(a)(3) (2019); STATE OF ALASKA, DEP'T OF HEALTH & SOC. SERVS., ALASKA CERTIFICATE OF NEED REVIEW STANDARDS AND METHODOLOGIES 1 (2005), http://www.dhss.alaska.gov/ dhcs/Documents/CertificateOfNeed/Standards.pdf.

**3** AS 18.07.031(d) raised the threshold to $1.5 million as of July 2014.

**4** AS 18.07.031(a).

pay an application fee, agree to participate in a statewide reporting system required by statute, and state whether the proposed CON is intended to change the bed capacity of the service area.[5]

But a statutory exemption allows an existing ambulatory surgery facility to relocate within the same community as long as it does not increase the services that it offers:

> Notwithstanding (a) of this section, a person who is lawfully operating a health care facility that is an ambulatory surgical facility at a site may make an expenditure of any amount in order to relocate the services of that facility to a new site in the same community without obtaining a certificate of need as long as neither the bed capacity nor the number of categories of health services provided at the new site is greater.[6]

The relocation exemption was added to the CON statute in 2000 after an ambulatory surgical center that wished to relocate two blocks from its existing location in Anchorage lobbied for an exemption to allow it to avoid the costs of the CON process.[7] The Anchorage facility's move was exempted shortly after the legislation passed. Fifteen years later a Wasilla facility relocated within Wasilla, and was granted the same exemption. Alaska Spine is the third applicant for an exemption from the CON requirement.

To determine whether it qualifies for an exemption or must expend the time and resources needed to prepare a CON application, a healthcare facility may submit a

---

[5]     7 AAC 07.040(a) (2010).

[6]     AS 18.07.031(c).

[7]     Ch. 18, § 2, SLA 2000; *see Beal v. McGuire*, 216 P.3d 1154, 1159-61 (Alaska 2009) (providing a history of the exemption's creation).

Request for Determination (RFD) to the Department prior to beginning the CON process.[8] Once the Department makes a determination, it must publish notice of its decision online and in a statewide newspaper.[9]

### B.     Facts

Alaska Spine Center is an ambulatory surgical facility located in Anchorage. Alaska Spine was not required to obtain a CON when it first constructed its facility, nor when it later built an addition, because each of those projects cost less than the threshold amount at the time.

In early August 2016 Alaska Spine submitted an RFD to the Department seeking a determination that its relocation to Wasilla was exempt from CON requirements under AS 18.07.031(c). It requested the exemption because it would be relocating within the "same community" and would not increase its service capacity.[10] The RFD acknowledged that costs "will exceed the current CON monetary threshold of $1.5 million." Alaska Spine explained that further cost details were unnecessary because the relocation exemption permitted expenditures of any amount.

The Department's CON program staff sent a letter to Alaska Spine seeking additional information: a certified cost estimate, a more specific location description, and a description of specific services to be offered. In response to Alaska Spine's claim that a more detailed cost estimate was unnecessary, the letter stated that "the Department cannot make that [d]etermination on the information provided."

---

**8**      7 AAC 07.031.

**9**      7 AAC 07.032.

**10**      *See* AS 18.07.031(c) (allowing ambulatory surgical facility to relocate regardless of cost and without CON so long as bed capacity and services provided do not increase and it moves within same community).

Alaska Spine met with CON program staff to discuss the RFD, then submitted additional information on October 11. Following the meeting, program staff agreed with Alaska Spine that no cost estimate was necessary and accepted the acknowledgment that the cost would exceed $1.5 million because "there is no issue regarding whether this project will exceed the CON cost threshold." Program staff also determined that accepting such an estimate was in line with past CON determinations.

## C.    Proceedings

In October 2016 the Department published its determination: "For the purposes of CON, Wasilla is considered to be in the same service area as Anchorage. Therefore, the proposed relocation is considered to be within the same community." The determination also noted "neither capacity nor the number of categories of health services provided at the site will be greater." The Department concluded that Alaska Spine satisfied the exemption requirements of AS 18.07.031(c) and did not require a CON to relocate its facility to Wasilla.

In November 2016 Mat-Su Valley Medical Center, LLC filed suit in Anchorage superior court challenging the Department's determination, seeking declaratory and injunctive relief against the Department and Alaska Spine. Mat-Su Medical operates five surgery suites in the Matanuska-Susitna Valley at a Palmer facility. Mat-Su Medical argued that Anchorage and the Matanuska-Susitna Valley are not the "same community," that Alaska Spine therefore did not qualify for a relocation exemption, and that the Department's determination that it was exempt from a CON did not comply with the RFD regulation and was therefore void. Mat-Su Medical also sought both preliminary and permanent injunctions against the construction and operation of Alaska Spine's proposed Wasilla facility unless and until a CON was obtained. Both Alaska Spine and the Department answered the complaint, arguing the

Department's determination was entitled to deference and that it had properly interpreted the CON laws and regulations.

In April 2017 Alaska Spine moved for summary judgment, arguing that the Department's determination and its acceptance of the RFD were owed deference because both were within the Department's specialized expertise. In response Mat-Su Medical filed a cross-motion for summary judgment, arguing that the meaning of "same community" was an issue of statutory interpretation committed to the court's independent judgment. It also argued that the statutory language, legislative history, and the Department's own regulations did not support the determination that Anchorage and Wasilla are in the "same community." Mat-Su Medical argued in addition that a certified cost estimate was explicitly required by regulation and could not be waived in an RFD.

The Department supported Alaska Spine's motion for summary judgment and opposed Mat-Su Medical's cross-motion. Alaska Spine opposed Mat-Su Medical's cross-motion for summary judgment.

Surgery Center of Wasilla, LLC, the only other ambulatory surgical facility operating in the Matanuska-Susitna Valley, moved to intervene in June. Mat-Su Medical asked the court to allow the intervention; both the Department and Alaska Spine opposed it. The superior court granted the motion to intervene and Surgery Center of Wasilla joined Mat-Su Medical's arguments against the exemption determination and lack of a cost estimate in the RFD.[11]

The superior court granted Mat-Su Medical's cross-motion for summary judgment and denied Alaska Spine's motion for summary judgment. The court applied its independent judgment and concluded that Anchorage and Wasilla are not the same

---

[11]    On appeal, we refer to Mat-Su Medical and Surgery Center of Wasilla collectively as "Mat-Su Medical."

community.  The court also found that Alaska Spine's RFD was void because its failure to include a cost estimate did not comply with the regulation.

Alaska Spine appeals.  The Department has not appealed.

## III.   STANDARD OF REVIEW

"When the superior court acts as an intermediate appellate court, we independently review the merits of the underlying administrative decision.  The specific form our independent review takes is de novo review."[12]

We apply our independent judgment to review the agency's interpretation of "same community."[13]   Independent judgment is appropriate "where the agency's specialized knowledge and experience would not be particularly probative on the meaning of the statute."[14]   "[W]e 'look to the meaning of the language, the legislative history, and the purpose of the statute and adopt the rule of law that is most persuasive in light of precedent, reason, and policy' " when determining the meaning of a statute.[15]  When applying the plain meaning rule, we use "a sliding scale approach to statutory interpretation, in which 'the plainer the statutory language is, the more convincing the

---

[12]    *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 72 (Alaska 2013).

[13]    *Mat-Su Valley Med. Ctr., LLC v. Advanced Pain Ctrs. of Alaska, Inc.*, 218 P.3d 698, 700 (Alaska 2009) ("[I]nterpretation and application of a statute are questions of law to which we apply our independent judgment.").  We review agency decisions under the reasonable basis standard when they involve agency expertise or implicate fundamental policies within the scope of the agency's function.  *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986).  Although it is not clear that either is the case here given the dearth of previous applications for CON exemptions, our decision would be the same under the reasonable basis standard.

[14]    *Hammond*, 726 P.2d at 175.

[15]    *Mat-Su Valley Med. Ctr., LLC*, 218 P.3d at 701 (quoting *Enders v. Parker*, 66 P.3d 11, 13-14 (Alaska 2003)).

evidence of contrary legislative purpose or intent must be' " to overcome the plain meaning.[16]

## IV. DISCUSSION

The relocation exemption to the CON requirement allows an ambulatory surgical facility to relocate, regardless of the cost, so long as the relocation is in the same community and does not increase the bed capacity or number of health service categories provided.[17] Alaska Spine's new facility will not increase its bed capacity or number of health service categories. At issue is whether Alaska Spine's move from Anchorage to Wasilla satisfies the exemption's requirement that it relocate within the "same community."

Anchorage and Wasilla are not in the "same community." Neither the plain language nor its legislative purpose allows for a determination that they are. The legislative history does not clearly support attaching a meaning to "same community" other than the plain language. While we need not define "same community," it is clear that Wasilla and Anchorage do not fall within the term's bounds. We therefore affirm the superior court's grant of Mat-Su Medical's cross-motion for summary judgment and its denial of Alaska Spine's motion for summary judgment.[18]

### A. The Meaning Of "Same Community" Is Clear Based On The Plain Language Of The Statute.

"When interpreting a statute, we construe its language 'in accordance with

---

[16] *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 11 (Alaska 2014) (quoting *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013)).

[17] AS 18.07.031(c).

[18] Because we find Alaska Spine does not meet the requirements for "same community," we do not otherwise address the validity of Alaska Spine's RFD.

[its] common usage, unless the word or phrase in question has acquired a peculiar meaning by virtue of a statutory definition or judicial construction.' "[19] "Same community" has not acquired any peculiar meaning in the CON context. The phrase is not used in any other part of the CON statutes and regulations, nor is there a definition in any other statute or regulation to which the CON program could look for guidance. "Same community" is a non-technical term and does not require a statutory definition to be understood. The common usage of the term "community" does not support the determination that Anchorage and Wasilla are in the "same community."[20]

Alaska Spine and Mat-Su Medical argue for various dictionary definitions to support their interpretations of "same community." But there is no need to go beyond the common usage of the term:[21] Wasilla and Anchorage are not commonly considered to be the "same community." Neither Anchorage residents nor Wasilla residents would consider themselves to be members of the same local community. The Municipality of Anchorage and the Matanuska-Susitna Borough (in which Wasilla is located) are distinct boroughs with separate local governments.[22] Wasilla is located 44 miles northeast of

---

[19]    *City of Valdez v. State*, 372 P.3d 240, 251 (Alaska 2016) (alteration in original) (quoting *Municipality of Anchorage v. Suzuki*, 41 P.3d 147, 150 (Alaska 2002)).

[20]    *See Mat-Su Valley Med. Ctr., LLC*, 218 P.3d at 703 (interpreting statute as it would be "rationally read").

[21]    *City of Valdez*, 372 P.3d at 251; *see also Mat-Su Valley Med. Ctr., LLC*, 218 P.3d at 703-04 (interpreting statute based on what is grammatically correct, effect on enforcement, and most rational reading of statute).

[22]    *Boroughs in Alaska*, BALLOTPEDIA.ORG, https://ballotpedia.org/Boroughs_ in_Alaska (last visited January 28, 2019); Matanuska-Susitna Borough, *Incorporated City Parcel Maps*, MATSUGOV.US, https://www.matsugov.us/maps/incorporated-city-parcel-maps (last visited January 28, 2019) (Certain areas of Alaska have formed boroughs which act as political subdivisions of the state.).

Anchorage and is about a 55 minute drive away.[23]   As the superior court noted, Anchorage and Wasilla have separate school districts, separate police forces, different elected state representatives, independent hospitals, and no overlapping taxation issues.

The CON program coordinator looked at the definition of "service area" to determine whether Wasilla and Anchorage were in the same community.   But the Department's regulations for the CON program suggest that the two terms are not interchangeable.  The regulations define "service area" as "the geographic area to be served by the proposed activity, *including the community* where the proposed activity will be located."[24]  The definition thus suggests that "service area" is a broader concept than "community."

Alaska Spine argues that defining community as the service area makes sense because service area is the unit used to calculate health service needs, so relocating within the same service area should not change the calculations of need done by the Department.  But the regulatory definition of service area treats community as its subset, and the use of different language shows these phrases are not synonymous.  Principles of statutory construction mandate that we assume the legislature meant to differentiate between two concepts when it used two different terms.[25]  "Service area" is defined as an area "*including* the community where the proposed activity will be located."[26] "Including" suggests that a community fits within a service area, but is not its equivalent.

---

[23]     *Alaska Driving Map*, ALASKA.ORG, http://www.alaska.org/assets/content/ maps/Alaska-Driving-Map.pdf (last visited January 28, 2019).

[24]     7 AAC 07.900(36) (emphasis added).

[25]     *See Ganz v. Alaska Airlines, Inc.*, 963 P.2d 1015, 1018-19 (Alaska 1998) (assuming if legislature meant the same type of restriction in both subsections then it would have used similar language).

[26]     7 AAC 07.900(36) (emphasis added).

"Service area" is also used throughout CON regulations and application instructions;[27] if the legislature meant "community" to be synonymous with "service area," a term discussed by the legislature prior to passing the relocation exemption, it would have had no reason to use the different term "community."[28] We assume the legislature used a different word because it meant a different thing, and that the Department complied with legislative intent when it wrote its regulations.[29] The plain meaning of "same community" is not equivalent to "service area."

## B. The Legislative History Of AS 18.07.031 Is Not Contrary To The Plain Meaning Of "Same Community."

A party urging us to give statutory language a meaning other than its plain meaning bears the burden of demonstrating that legislative history is contrary to the plain meaning.[30] The clearer the plain language, the more persuasive contrary legislative history must be.[31] The relocation exemption plainly states that the relocation must be in the "same community." The legislative history surrounding this term is too inconclusive to disprove the plain meaning.

---

[27] All of the following regulations use the term "service area": 7 AAC 07.010, 07.025, 07.032, 07.040, 07.042, 07.052, 07.070.

[28] *See* Minutes, House State Affairs Comm. Hearing on H.B. 297, 21st Leg., 1st Sess. (Mar. 16, 2000) (statement of Rep. Jeannette James, Chair, House State Affairs Comm.).

[29] *See Alaska Ass'n of Naturopathic Physicians v. State, Dep't of Commerce*, 414 P.3d 630, 634-35 (Alaska 2018) (noting that the party challenging a regulation bears the burden of showing it is inconsistent with the statute).

[30] *See State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016).

[31] *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 11 (Alaska 2014).

The statutory amendment allowed a health care facility to avoid the expense and delay of the CON process if it relocated within the same community without increasing the services offered.[32] This legislative change was considered necessary because "CON time frames are extensive" and in the past "the CON could not be finished in the proper length of time."[33] Because there would be no change in the facility's capacity or services offered, the legislature determined that a CON was not required.[34]

The legislative history of the relocation statute provides little guidance, but is not clearly contrary to the statute's plain language. The legislative testimony and discussion were conflicting. The hearing record included a statement that Fairbanks and Delta Junction might be in the "same community" because they are in the same "service area."[35] It contained statements from the committee chair that "community means service area."[36] But the chair also stated that the "same community" exemption "would not allow someone to move from Anchorage to the Matanuska-Susitna Borough or vice versa," in part because facilities in Anchorage do not address the same community needs as those in the Matanuska-Susitna Valley.[37]

---

[32] Minutes, House State Affairs Comm. Hearing on H.B. 297, 21st Leg., 1st Sess. (Mar. 16, 2000) (sponsor statement on H.B. 297).

[33] *Id.* (statement of Rep. Jeannette James, Chair, House State Affairs Comm.).

[34] *Id.*

[35] *Id.* (testimony of Rick Soley, Dir. of Community Relations & Planning, Fairbanks Mem'l Hosp. & Denali Ctr.).

[36] *Id.* (statement of Rep. Jeannette James, Chair, House State Affairs Comm.).

[37] *Id.*

The committee also alternated between leaving the "same community" determination to the Department's expertise and defining the term itself. The chair ended the discussion of whether Fairbanks and Delta Junction were the same community by declaring that the determination would be up to the Department, but then independently determined that Anchorage and the Matanuska-Susitna Borough were not in the same community.[38]

Alaska Spine argues that this legislative history supports deference to the Department's interpretation of "same community." Mat-Su Medical argues that it does not, but urges us to focus on the statement that a move from Anchorage to the Matanuska-Susitna Borough — as Alaska Spine proposes — would not be allowed.

We are not persuaded by either argument. To overcome the plain meaning of the statute, Alaska Spine must demonstrate that the legislative history is clearly contrary to it. It has not done so. The legislative history is contradictory and ambiguous, and does not overcome the presumption in favor of the statute's plain language.

C.      **The Legislative Purpose Of AS 18.07.031 Supports The Plain Meaning Of "Same Community."**

"[W]hen engaging in statutory interpretation, we aim to 'construe a statute in light of its purpose.' "[39] We look to the intent of the legislature and prior applications of the statute by the agency when determining legislative purpose.[40]

---

[38]     *Id.* (statement of Rep. Jeannette James, Chair, House State Affairs Comm.; testimony of Sharon Anderson, Alaska State Hosp. & Nursing Home Ass'n).

[39]     *City of Valdez v. State*, 372 P.3d 240, 254 (Alaska 2016) (quoting *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 193 (Alaska 2007)).

[40]     *See id.* at 254-55; *N. Alaska Envtl. Ctr. v. State, Dep't of Nat. Res.*, 2 P.3d 629, 634 (Alaska 2000).

### 1. The relocation exemption's purpose

The CON program was established to ensure that there was "a need for the proposed service" before authorizing the construction of new health care facilities.[41] The later addition of an exemption for a facility relocating within the same community allowed the Department to waive completion of a CON, but did not alter the CON program's purpose.

When a facility providing the same amount and type of service relocates within the same community, the CON calculations of need in that service area are not affected. The relocation exemption was intended to allow facilities which are not expanding their services to avoid the delays and expenses of the full CON process. The relocation exemption's purpose of streamlining the process for such facilities creates a narrow exception for a small number of applicants; it works in concert with the CON statute to achieve the legislature's overarching purpose.

### 2. Past applications of the relocation exemption and the term "community"

Alaska Spine argues that determining that it was eligible for the exemption aligns with the purpose of the statute. It urges us to uphold the Department's determination that "community" and "service area" are equivalent, arguing that this "perfectly fits the purpose of the statute" because both are considered when calculating the need for a given service area.

But not all regions of a service area are equivalent: while some residents of the Matanuska-Susitna Borough travel to Anchorage for health services, that does not mean similar numbers from Anchorage travel to the Matanuska-Susitna Borough. Mat-

---

[41] STATE OF ALASKA, DEP'T OF HEALTH & SOC. SERVS., ALASKA CERTIFICATE OF NEED REVIEW STANDARDS AND METHODOLOGIES 1 (2005), http://www.dhss.alaska.gov/dhcs/Documents/CertificateOfNeed/Standards.pdf.

Su Medical presented evidence that only 1.6% of Mat-Su Regional's outpatients come from Anchorage. It is similarly likely that the majority of Alaska Spine's current Anchorage patients will not travel to a relocated facility in Wasilla. This illustrates that facilities in the Matanuska-Susitna Borough serve a different community than facilities in Anchorage, despite being in the same service area. Treating these terms as equivalent would undermine the CON program's purpose of ensuring an appropriate balance of services.

Since its adoption in 2000, there have only been two prior determinations of eligibility for the relocation exemption. Both of them were for relocations within the same municipality: the first was a two-block move in Anchorage; the second a move within the city of Wasilla. There has never been an application for or grant of a relocation exemption for a move from one municipality to another, and no previous consideration of whether Anchorage and Wasilla are in the "same community."

The Department has, however, explicitly referred to Anchorage and Wasilla as separate communities in another related context. In approving a 2016 CON application for long-term care facilities in the Matanuska-Susitna Valley, the Department noted that "[t]he CON Program considers the three communities of Anchorage, Wasilla and Palmer to be a single service area. The CON Program, in the history of its practice, has never excluded one community or divided the Anchorage/Matanuska-Susitna Valley service area when calculating need [for long-term care facilities]." The Department distinguished community from service area, treating Anchorage as a separate community from Wasilla. Consistent with the regulatory definition of service area that treats "community" as a subset within a "service area," the Department's CON program identified multiple communities within the service area. The Department's past practice in administering the CON program does not support its determination that Anchorage and Wasilla are the same community.

## V.   CONCLUSION

The Department's grant of the exemption was incorrect. We accordingly AFFIRM the superior court's grant of Mat-Su Medical's cross-motion for summary judgment and its denial of Alaska Spine's motion for summary judgment.